UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-------------------------------------------------------------------- X

**STUART FORCE**, individually and as personal
representative of the estate of Taylor Force;

**ROBBI FORCE;**

**KRISTIN ANN FORCE;**

**MENACHEM MENDEL RIVKIN,** individually and as
the natural guardian of minor plaintiffs S.S.R., M.M.R.,
R.M.R., S.Z.R.;

**BRACHA RIVKIN,** individually and as the natural
guardian of minor plaintiffs S.S.R., M.M.R., R.M.R.,
S.Z.R.;

**S.S.R.**, minor;

**M.M.R.**, minor;

**R.M.R.**, minor;

**S.Z.R.**, minor;

**YEHUDA GLICK**, individually and as natural guardian
of minor plaintiffs S.G., R.T. and T.T.;

**YAFFA GLICK**, individually and as natural guardian of
minor plaintiffs S.G., R.T. and T.T.;

**NERIA DAVID GLICK;**

**SHLOMO GLICK;**

**HALLEL GLICK;**

**S.G.**, minor;

Case: 1:16-cv-01468        (E-Deck)
Assigned To : Moss, Randolph D.
Assign. Date : 7/15/2016
Description: General Civil    Jury Demand

**Jury Trial Demanded**



1

**R.T.,** minor;

**T.T.,** minor;

**MICAH LAKIN AVNI,** individually and as personal representative of the Estate of Richard Lakin;

**MANYA LAKIN,** individually and as personal representative of the Estate of Richard Lakin

**RIVKA MARTHA MORIAH,** individually and as personal representative of the Estate of Avraham David Moses, and as the natural guardian of minor plaintiffs N.M., C.M. and Z.G.M.;

**NAFTALI ANDREW MOSES,** individually and as personal representative of the Estate of Avraham David Moses and as the natural guardian of minor plaintiffs O.D.M. and A.M.;

**DAVID MORIAH,** individually and as the natural guardian of minor plaintiffs N.M., C.M. and Z.G.M.;

**N.M.,** minor;

**C.M.,** minor;

**Z.G.M.,** minor;

**O.D.M.,** minor;

**A.M.,** minor,

**ELISHA DAN MOSES**

**AVIAD MORIAH**

**HAGIT  GIBOR MORIAH;**

**EITAN YOEL MORIAH**;

**YIFAT MORIAH**;

**ATARA NESIA MORIAH**;

**NAFTALI SHITRIT**;

**GILA RACHEL SHITRIT**, individually and as the natural guardian of minor plaintiffs N.S., Y.S., A.S., E.S. and H.S.;

**YAAKOV SHITRIT**, individually and as the natural guardian of minor plaintiffs N.S., Y.S., A.S., E.S. and H.S.;

**MEIRI SHITRIT**;

**OSHRAT SHITRIT**;

**N.S.**, minor;

**Y.S.**, minor;

**A.S.**, minor;

**E.S.**, minor;

**H.S.**, minor;

**SHMUEL ZEV SHIMON BRAUNER**, individually and as the natural guardian of minor plaintiffs C.Y.B., M.H.B., Y.A.L.B.;

**NECHAMA BRAUNER**, individually and as the natural guardian of minor plaintiffs C.Y.B., M.H.B., Y.A.L.B.;

**C.Y.B.**, minor;

**M.H.B.**, minor;

**Y.A.L.B.**, minor;

**MORDECHAI BRAUNER**;

**ESTHER CHAYA BRAUNER**;

**DANIELLA SCHWADRON PARNAS**, individually and as
the natural guardian of minor plaintiff A.P.;

**A.P.**, minor;

**NOA PARNAS**;

and

**DANA PARNAS**;

                                Plaintiffs,

                -against-

**THE ISLAMIC REPUBLIC OF IRAN**
c/o of Foreign Minister Dr. Mohammad Javad Zarif
Ministry of Foreign Affairs
Khomeini Ave.United Nations St.
Teheran, Iran;

**THE IRANIAN MINISTRY OF INFORMATION AND
SECURITY**
c/o of Minister of Intelligence Mahmoud Alavi
Pasdaran Ave. GolestanYekon Teheran, Iran

and

**THE SYRIAN ARAB REPUBLIC**
c/o Foreign Minister Walid al-Mualem
Ministry of Foreign Affairs
Shora, Muajireen, Damascus, Syria

                          Defendants.

-------------------------------------------------------------------------X

## <u>COMPLAINT</u>

Plaintiffs, by their undersigned counsel, complain of the Defendants, and hereby allege

for their Complaint as follows:

## INTRODUCTION

1.      This is a civil action for wrongful death, personal injury and related torts pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*, arising from terror attacks in Israel carried about by agents of Hamas and the Palestine Islamic Jihad ("PIJ") between 2008 and 2015, in which decedents Taylor Force, Richard Lakin and Avraham David Moses were killed, plaintiffs Yehuda Glick, Menachem Mendel Rivkin, Naftali Shitrit and Shmuel Zev Shimon Brauner were severely physically injured and the remaining plaintiffs were severely psychologically and emotionally injured.

2.      These terrorist attacks were carried out by Hamas and PIJ using material support and resources provided by defendants the Islamic Republic of Iran and the Syrian Arab Republic.

## JURISDICTION AND VENUE

3.      This Court has personal and subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330-1332, 1367 and 1605A(a).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4) and the rules of pendent venue.

## THE PARTIES

5.      Plaintiff Stuart Force at all times relevant hereto, is and was an American citizen domiciled in South Carolina and the father, heir and personal representative of the estate of decedent Taylor Force. Plaintiff Stuart Force brings this action individually and on behalf of the estate of Taylor Force.

6.      Plaintiff Robbi Force at all times relevant hereto, is and was an American citizen domiciled in South Carolina and the mother of decedent Taylor Force.

7.      Plaintiff Kristin Ann Force at all times relevant hereto, is and was an American citizen and the sister of decedent Taylor Force.

8.      Plaintiff Menachem Mendel Rivkin, who was severely wounded in a Hamas terrorist attack, at all times relevant hereto, is and was an American citizen domiciled in Israel and the father of S.S.R., M.M.R., R.M.R., S.Z.R. Plaintiff Menachem Mendel Rivkin brings this action individually and as natural guardian of his minor children S.S.R., M.M.R., R.M.R., S.Z.R.

9.      Plaintiff Bracha Rivkin, at all times relevant hereto, is and was the wife of plaintiff Menachem Mendel Rivkin and the mother of plaintiffs S.S.R., M.M.R., R.M.R., S.Z.R. Plaintiff Bracha Rivkin brings this action individually and as natural guardian of her minor children S.S.R., M.M.R., R.M.R., S.Z.R.

10.     Plaintiffs S.S.R. and M.M.R, at all times relevant hereto, are and were American citizens domiciled in Israel and the minor children of plaintiffs Menachem Mendel Rivkin and Bracha Rivkin.

11.     Plaintiffs R.M.R. and S.Z.R, at all times relevant hereto, are and were the minor children of plaintiffs Menachem Mendel Rivkin and Bracha Rivkin.

12.     Plaintiff Yehuda Glick, who was severely wounded in a Palestine Islamic Jihad terrorist attack, was an American citizen domiciled in Israel at the time of the terrorist attack in which he was injured. He has since been elected to the Israeli Knesset and was compelled by Israeli law to renounce his American citizenship. Plaintiff Yehuda Glick is the father of plaintiffs Neria David Glick, Shlomo Glick, Hallel Glick and S.G. and the foster father of plaintiffs R.T. and T.T. Plaintiff Yehuda Glick brings this action individually and as natural guardian of his minor child S.G. and his minor foster children R.T. and T.T.

13.     Plaintiff Yaffa Glick, at all times relevant hereto, is and was the wife of plaintiff Yehuda Glick and the mother of plaintiffs Neria David Glick, Shlomo Glick, Hallel Glick and S.G. and the foster mother of plaintiffs R.T. and T.T. Plaintiff Yaffa Glick brings this action individually and as natural guardian of her minor child S.G. and her minor foster children R.T. and T.T.

14.     Plaintiffs Neria David Glick, Shlomo Glick, Hallel Glick and S.G., at all times relevant hereto, are and were American citizens domiciled in Israel and the children of plaintiffs Yehuda Glick and Yaffa Glick.

15.     Plaintiffs R.T. and T.T., at all times relevant hereto, are and were the minor foster children of plaintiffs Yehuda Glick and Yaffa Glick.

16.     Plaintiff Micah Lakin Avni, at all times relevant hereto, is and was an American citizen domiciled in Israel and the son, heir and personal representative of the estate of decedent Richard Lakin. Plaintiff Micah Avni brings this action individually and on behalf of the estate of Richard Lakin.

17.     Plaintiff Manya Lakin, at all times relevant hereto, is and was an American citizen domiciled in Israel and the daughter, heir and personal representative of the estate of decedent Richard Lakin. Plaintiff Manya Lakin brings this action individually and on behalf of the estate of Richard Lakin.

18.     Plaintiff Rivkah Martha Moriah, at all times relevant hereto is and was an American citizen domiciled in Israel and the mother, heir and personal representative of the estate of decedent Avraham David Moses.  Plaintiff Rivka Martha Moriah brings this action individually, on behalf of the estate of Avraham David Moses, and as natural guardian of her minor children plaintiffs N.M., C.M. and Z.G.M.

19.     Plaintiff Naftali Andrew Moses, at all times relevant hereto is and was an American citizen domiciled in Israel and the father, heir and personal representative of the estate of decedent Avraham David Moses. Plaintiff Naftali Andrew Moses brings this action individually, on behalf of the estate of Avraham David Moses, and as natural guardian of his minor children plaintiffs O.D.M. and A.M.

20.     Plaintiff David Moriah, at all times relevant hereto is and was an American citizen and the stepfather of decedent Avraham David Moses. Plaintiff David Moriah brings this action individually and as natural guardian of his minor children, plaintiffs N.M., C.M. and Z.G.M.

21.     Plaintiffs Elisha Dan Moses, N.M., C.M., O.D.M. and A.M. at all times relevant hereto are and were American citizens and the siblings of decedent Avraham David Moses.

22.     Plaintiff Aviad Moriah at all times relevant hereto is and was an American citizen and the step-brother of decedent Avraham David Moses.

23.     Plaintiffs Z.G.M., Hagit Gibor Moriah, Eitan Yoel Moriah, Yifat Moriah and Atara Nesia Moriah at all times relevant hereto are and were the step-siblings of decedent Avraham David Moses.

24.     Plaintiff Naftali Shitrit, who was severely wounded in a Hamas terrorist attack, at all times relevant hereto is and was a United States citizen.

25.     Plaintiff Gila Rachel Shitrit, at all times relevant hereto is and was an American citizen and the mother of plaintiffs Naftali Shitrit, Meiri Shitrit, Oshrat Shitrit, N.S., Y.S., A.S., E.S. and H.S. Plaintiff Gila Rachel Shitrit brings this action individually and as natural guardian of her minor children N.S., Y.S., A.S., E.S. and H.S.

26.     Plaintiff Yaakov Shitrit, at all times relevant hereto is and was the father of plaintiffs Naftali Shitrit, Meiri Shitrit, Oshrat Shitrit, N.S., Y.S., A.S., E.S. and H.S. Plaintiff Yaakov Shitrit brings this action individually and as natural guardian of his minor children N.S., Y.S., A.S., E.S. and H.S.

27.     Plaintiffs Meiri Shitrit, Oshrat Shitrit, N.S., Y.S., A.S., E.S. and H.S., at all times relevant hereto are and were American citizens and the siblings of Naftali Shitrit.

28.     Plaintiff Shmuel Zev Shimon Brauner, who was severely wounded in a Hamas terrorist attack, at all times relevant hereto is and was an American citizen and the father of C.Y.B., M.H.B. and Y.A.L.B. Plaintiff Shmuel Zev Shimon Brauner brings this action individually and as natural guardian of his minor children C.Y.B., M.H.B. and Y.A.L.B.

29.     Plaintiff Nechama Brauner, at all times relevant hereto is and was an American citizen and the mother of C.Y.B., M.H.B. and Y.A.L.B. Plaintiff Nechama Brauner brings this action individually and as natural guardian of her minor children C.Y.B., M.H.B. and Y.A.L.B.

30.     Plaintiffs Mordechai Brauner and Esther Chaya Brauner, at all times relevant hereto are and were American citizens and the parents of plaintiff Shmuel Zev Shimon Brauner.

31.     Plaintiff Daniella Schwadron Parnas, at all times relevant hereto is and was an American citizen and the mother of plaintiffs Noa Parnas, Dana Parnas and A.P., all of whom suffer severe psychological and emotional injuries as a result of repeated Hamas terror attacks. Plaintiff Daniella Schwadron Parnas brings this action individually and as natural guardian of her minor child A.P.

32.     Plaintiffs Noa Parnas, Dana Parnas and A.P., at all times relevant hereto are and were American citizens.

33.     Defendant The Islamic Republic of Iran ("Iran") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated since 1984 as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Iran, through its political subdivisions, agencies, instrumentalities, officials, employees and agents, including the Iranian Ministry of Information and Security, provided Hamas and PIJ with material support and resources, for acts of extrajudicial killing within the meaning of 28 U.S.C. § 1605A(a)(1), including the terrorist attacks at issue herein, and performed other actions that enabled, facilitated and caused the terrorist attacks at issue herein and harm to the plaintiffs herein.

34.     Defendant The Iranian Ministry of Information and Security ("MOIS") is the Iranian intelligence service. Within the scope of its agency and office, MOIS provided material support and resources for the commission of acts of extrajudicial killing, including the terrorist attacks at issue herein, and performed other actions, that enabled, facilitated and caused the terrorist attacks and harm to the plaintiffs herein.

35.     Defendant The Syrian Arab Republic (hereinafter "Syria") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Syria provided Hamas and PIJ with material support and resources for the commission of acts of extrajudicial killing within the meaning of 28 U.S.C. § 1605A(a)(1), including the terrorist attacks at issue herein, and performed other actions that enabled, facilitated and caused the terrorist attacks at issue herein and harm to the plaintiffs herein.

## UNDERLYING FACTS

**Hamas**

36.    Hamas is a radical terrorist organization that was established by Islamic militants in 1987.   It is the Palestinian branch of the extremist Muslim Brotherhood organization.

37.    Hamas views Israel and the United States as the greatest enemies of Islam. Hamas opposes a peaceful resolution of the Middle East conflict. The Hamas charter, first published in 1988, states that "There is no solution to the Palestinian problem except by Jihad," or violent struggle against Israel and the West.

38.    Hamas's openly-declared goal is the creation of an Islamic state in the territory of Israel, the West Bank and the Gaza Strip, and the destruction of the State of Israel and the murder or expulsion of its Jewish residents. Hamas seeks to achieve this goal by carrying out terrorist attacks against Jewish civilians in Israel, the West Bank and the Gaza Strip. Hamas proudly and openly acknowledges that it uses terrorism to achieve its political goals. Hamas employs extremist violence against civilian targets in an effort to coerce, intimidate and influence government decision-makers and the public in Israel to accept Hamas's demands.

39.    Between the time of its founding and the dates of the terrorist attacks at issue herein (and until the present day), Hamas has carried out thousands of terrorist attacks in Israel, the West Bank and the Gaza Strip, in which scores of Israeli and U.S. citizens, as well as the nationals of many other countries, were murdered and thousands more wounded.

40.    Between the time of its founding and the dates of the terrorist attacks at issue herein, Hamas's policy and practice of carrying out terrorist attacks was and is notorious and well known to the public at large, including the defendants.

41.     Since June 2007, two years after Israel's summer 2005 disengagement from Gaza, Hamas has controlled the Gaza Strip. Under Hamas control, thousands of terrorist rockets and mortar shells have been fired from the Gaza Strip at Israeli towns and villages, terrorizing and destabilizing the lives of hundreds of thousands of Israeli citizens.

42.     Between 1999 and the dates of the terrorist attacks at issue herein, the courts of the United States, including this Court, published a number of decisions finding that Hamas was responsible for terrorist attacks in which American and Israeli citizens were killed or injured.

43.     Hamas has been designated by the United States Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

**Palestine Islamic Jihad**

44.     The PIJ is a radical terrorist organization. The PIJ's openly-declared goal is the creation of an Islamic state in the territory of Israel, the West Bank and the Gaza Strip, and the destruction of the State of Israel and the murder or expulsion of its Jewish residents. The PIJ seeks to achieve this goal by carrying out terrorist attacks against Israeli targets. The PIJ proudly and openly acknowledges that it uses terrorism to achieve its political goals. The PIJ uses terrorism in an effort to coerce, intimidate and influence government decision-makers and the public in Israel to accept the PIJ's demands.

45.     Between the time of its founding and October 29, 2014 (and until the present day), PIJ has carried out thousands of terrorist attacks against Israeli targets, in which scores of Israeli and U.S. citizens, as well as other nationalities, were murdered and hundreds more were wounded.

46.     Between the time of its founding and October 29, 2014 (and until the present day), PIJ's policy and practice of carrying out terrorist attacks was and is notorious and well known to the public at large, including the defendants.

47.     Between 1999 and October 29, 2014, the courts of the United States, including this Court, published a number of decisions finding that PIJ was responsible for terrorist attacks in which American and Israeli citizens were killed or injured.

48.     The PIJ has been designated by the United States Government as a Foreign Terrorist Organization ("FTO") continuously since 1997 and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

49.     Since 1988 and until the present day, the PIJ's headquarters have been continuously located in Damascus, Syria.

**Iran's Provision of Material Support and Resources to Hamas and PIJ**

50.     Since 1984 until the present time, defendant Iran has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

51.     During the period relevant hereto, including the several year period preceding the terrorist attacks at issue herein, defendants Iran and MOIS provided Hamas and PIJ with massive financial support with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. Such financial support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Iran, in order to assist Hamas and PIJ achieve goals shared by Iran. These goals included terrorizing the Jewish

civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness through extremist violence targeting civilians.

52.     The Iranian defendants provided this financial support to Hamas and PIJ pursuant to agreements reached in the 1980s between Iran and Hamas and Iran and PIJ, respectively, which remain in force until today. Under those agreements, Hamas and PIJ undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Iran undertook to provide Hamas and PIJ with financial support to carry out such extrajudicial killings and terrorist attacks. The purpose of these agreements was to achieve the goals detailed in the preceding paragraph.

53.     The Iranian defendants gave substantial aid, assistance and encouragement to one another and to Hamas and PIJ, and provided massive financial support to Hamas and PIJ, and thereby aided and abetted Hamas and PIJ, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. The Iranian defendants did so with actual knowledge that Hamas and PIJ had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to Hamas and PIJ.

54.     The Iranian defendants knowingly and willingly conspired, agreed and acted in concert with one another and with Hamas and PIJ, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. The Iranian defendants did so with actual knowledge that Hamas and PIJ had killed and injured

numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas and PIJ.

55.     At all times relevant hereto, defendant MOIS was an agency, instrumentality and/or office of defendant Iran, and performed acts on behalf of defendant Iran, in furtherance of the interests and policy of defendant Iran and within the scope of its agency and office, within the meaning of 28 U.S.C. § 1605A(a)(1) and 28 U.S.C. § 1605A(c), which caused the terrorist attacks at issue herein and harm to the plaintiffs herein, in that defendant MOIS implemented and acted as a conduit and instrumentality for Iran's provision of funds and other material support to Hamas and PIJ for the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein.

56.     Defendant Iran authorized, ratified and approved the acts of defendant MOIS.

57.     Accordingly, defendant Iran is vicariously liable for the acts of defendant MOIS.

58.     This Court repeatedly has held Iran and MOIS liable to victims of state-sponsored terrorism, particularly for terrorist acts carried out by Hamas and PIJ in Israel. *See, e.g., Wultz v. Islamic Republic of Iran,* 864 F. Supp.2d 24 (D.D.C. 2012); *Bennett v. Islamic Republic of Iran,* 507 F. Supp.2d 117 (D.D.C. 2007); *Bodoff v. Islamic Republic of Iran*, 424 F. Supp.2d 74 (D.D.C. 2006); *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003); *Stern v. Islamic Republic of Iran*, 271 F. Supp.2d 286 (D.D.C. 2003); *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13 (D.D.C. 2002); *see also Leibovitch v. Syrian Arab Republic*, 25 F. Supp. 3d 1071 (N.D. Ill. 2014).

**Syria's Provision of Material Support and Resources to Hamas and PIJ**

59.     Since 1979 until the present time, defendant Syria has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

60.     During the period relevant hereto, including the several year period preceding the terrorist attacks at issue herein, defendant Syria provided Hamas and PIJ with material support and resources within the meaning of 28 U.S.C. § 1605A(a)(1), described in detail below, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. Such support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Syria, in order to assist Hamas and PIJ achieve goals shared by Syria. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness through extremist violence targeting civilians.

61.     Defendant Syria provided the material support and resources detailed below to Hamas and PIJ pursuant to agreements reached in the late 1980s between Syria and Hamas and Syria and PIJ, respectively. Under those agreements, Hamas and PIJ undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Syria undertook to provide Hamas and PIJ with material support and resources to carry out such extrajudicial killings and terrorist attacks. The purpose of those agreements was to achieve the goals detailed in the preceding paragraph.

62.     The material support and resources which were provided by Syria to Hamas and PIJ in the years preceding the terrorist attacks at issue herein for the purpose of facilitating acts

of extrajudicial killing and terrorism included *inter alia*: provision of financial support to Hamas and PIJ for the purpose of carrying out terrorist attacks; provision of military-grade explosives, military firearms and other weapons and material to Hamas and PIJ; provision of specialized and professional military training for the planning and execution of terrorist attacks (hereinafter: "terrorist training") to Hamas and PIJ; providing use of Syria-owned and operated training bases and military facilities in which terrorist training was provided to Hamas and PIJ and their terrorist operatives; providing Hamas and PIJ and their terrorist operatives with safe haven and refuge from capture in Syria and in areas of Lebanon controlled by Syria; providing Hamas and PIJ means of electronic communication and electronic communications equipment for carrying out terrorist attacks; financial services, including banking and wire transfer services, provided to Hamas and PIJ by financial institutions owned and controlled by Syria at Syria's direction, which services were intended to and did enable Hamas and PIJ to surreptitiously transfer funds used to finance terrorist attacks; and means of transportation, including allowing terrorist operatives of Hamas and PIJ passage and transportation on Syrian-owned aircraft to allow them to avoid detection and carry out further terrorist attacks.

63.     At all times relevant hereto, defendant Syria provided Hamas and PIJ and their terrorist operatives with terrorist training at military training bases, camps and facilities operated and/or funded and/or controlled by Syria and located in Syria and in areas of Lebanon controlled by Syria, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. This terrorist training, which was professional and extensive and included the use of explosives, firearms and other weapons, was provided by and through Syrian military and intelligence

officials, and other agents, employees and officials of Syria acting within the scope of their agency and employment and under the express command and authorization of Syria.

64.     In addition, at all times relevant hereto, Syria provided terrorist training, weapons, and funds to be used to carry out terrorist attacks to Hamas and PIJ and their terrorist operatives, by and through the agency of other terrorist organizations which received material support and resources from Syria, and which acted as instrumentalities, agents and proxies of Syria for the purpose of providing terrorist training and other material support and resources to Hamas and PIJ.

65.     At all times relevant hereto, Syria provided Hamas and PIJ and their terrorist operatives with lodging, safe haven and shelter in Syria and in areas of Lebanon controlled by Syria, with the specific intention of preventing their apprehension and permitting them to plan and carry out acts of extrajudicial killing and international terrorism freely and unhindered. This lodging, safe haven and shelter was provided on military bases and facilities, and in residences, owned and controlled by Syria.

66.     Syria gave substantial aid, assistance and encouragement to Hamas and PIJ, and provided the massive material support and resources described above to Hamas and PIJ, and thereby aided and abetted Hamas and PIJ, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. Defendants Syria did so with actual knowledge that Hamas and PIJ had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to the Hamas and PIJ.

67.     Syria knowingly and willingly conspired, agreed and acted in concert with Hamas and PIJ, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. Defendant Syria did so with actual knowledge that Hamas and PIJ had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas and PIJ.

68.     This Court repeatedly has held Syria liable to victims of state-sponsored terrorism carried out by terrorist groups with material support from Syria. *See, e.g., Wyatt v. Syrian Arab Republic,* 908 F. Supp.2d 216 (D.D.C. 2012); *Wultz v. Islamic Republic of Iran*, 864 F. Supp.2d 24 (D.D.C. 2012); *Gates v. Syrian Arab Republic*, 646 F. Supp.2d 79 (D.D.C. 2009), *aff'd*, 646 F.3d 1 (D.C. Cir. 2011).

**Details of The Terrorist Attacks**

*Force Plaintiffs - Terrorist Stabbing – March 8, 2016*

69.     On the evening of March 8, 2016, an agent and operative of Hamas, Bashar Mohamed Massalha, assisted by another Hamas agent and operative, Muhammad Aweida, arrived with a knife at the Jaffa boardwalk, just south of Tel Aviv, and, acting on behalf of Hamas, began attacking pedestrians. Massalha stabbed to death 29 year-old decedent Taylor Force and seriously injured at least ten others (the "March 2016 Terrorist Stabbing").

70.     Decedent Taylor Force, a United States army veteran, was on a two day trip to Israel and the Palestinian territories with a group of M.B.A. students from Vanderbilt University's Owen Graduate School of Management. At the time of the stabbing attack, he was walking with some of his fellow Vanderbilt classmates along the Jaffa boardwalk, a popular

seaside promenade for shopping and leisure. The group was on their way to dinner at a nearby restaurant.

71.     The terrorist-stabber Massalha was shot dead by police after being chased from the Jaffa Port along the Tel Aviv beach promenade. Massalha was from the village of Hajja near Nablus and had a history of being affiliated with Hamas. He had just returned from a pilgrimage to Mecca. Hamas released a statement praising the attack as a "heroic operation" and referring to Massalha as one of its "martyred sons and daughters."

72.     Decedent Taylor Force was rushed to the Wolfson Medical Center, but was pronounced dead on arrival.

73.     Plaintiffs were devastated to learn the tragic news that their son and brother, Taylor Force, had been killed. They suffered severe psychological and emotional injuries as a result of the attack.

74.     The defendants conspired and acted in concert with Hamas, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the March 2016 Terrorist Stabbing, and other such acts of extrajudicial killing and international terrorism, and the March 2016 Terrorist Stabbing was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

75.     Hamas carried out the March 2016 Terrorist Stabbing utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the March 2016 Terrorist Stabbing and other such acts of extrajudicial killing and international terrorism.

*Rivkin Plaintiffs - Terrorist Stabbing – January 27, 2016*

76.     At approximately 11:00 p.m. on the night of January 27, 2016, an agent and operative of Hamas, Abada Abu Ras, arrived armed with a knife at a gas station in Givat Ze'ev just North of Jerusalem and, and, acting on behalf of Hamas, trailed plaintiffs Menachem Mendel Rivkin and Bracha Rivkin who were on their way to a nearby restaurant, stabbed plaintiff Menachem Mendel Rivkin in his neck and fled (the "January 2016 Terrorist Stabbing").

77.     Witnesses at the scene chased the terrorist stabber and subdued him until the police arrived to arrest him. The terrorist hails from the village of Bir Nabala near Jerusalem, a known Hamas stronghold. He is the son of senior Hamas operative, Dr. Azziz Abu Ras, who was among the founding Hamas members exiled to Marj al-Zohour, Lebanon in the early 1990's.

78.     Plaintiff Menachem Mendel Rivkin was rushed to the hospital in serious condition where he was placed into the intensive care unit. Plaintiff Menachem Mendel Rivkin remained hospitalized for eight days, five of which he was in intensive care. He continues to suffer from his injuries until today.

79.     Plaintiff Bracha Rivkin, who witnessed the attack and its aftermath, suffered severe psychological and emotional injuries as a result of the January 2016 Terrorist Stabbing. Plaintiffs S.S.R., M.M.R., R.M.R., S.Z.R., the minor children of Menachem Mendel and Bracha Rivkin also suffered severe psychological and emotional injuries as a result of the attack in which their parents were assaulted and their father was severely physically injured.

80.     The defendants conspired and acted in concert with Hamas, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the January 2016 Terrorist Stabbing, and other such acts of extrajudicial killing and international terrorism,

and the January 2016 Terrorist Stabbing was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

81.     Hamas carried out the January 2016 Terrorist Stabbing utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the January 2016 Terrorist Stabbing and other such acts of extrajudicial killing and international terrorism.

*Glick Plaintiffs - Shooting Attack – October 29, 2014*

82.     On the evening of October 29, 2014, an agent and operative of PIJ, Mu'taz Hijazi, armed with a gun, and acting on behalf of PIJ, arrived by motorcycle at the Menachem Begin Heritage Center in Jerusalem where plaintiff Yehuda Glick was attending a conference, and after confirming his identity, shot plaintiff Yehuda Glick at close range, critically wounding him (the "October 2014 Terrorist Shooting").

83.     Later that day, the terrorist shooter, Mu'taz Hijazi, was killed in a shootout with Israeli police while attempting to avoid arrest. He had a history of terrorist activity having been released from Israeli prison in 2012 after serving 11 years for various security related offenses.

84.     Plaintiff Yehuda Glick was taken to Jerusalem's Shaare Zedek Medical Center in serious condition where he underwent several surgeries, remained on a respirator for almost two weeks, and in the hospital for close to one month.

85.     Plaintiff Yehuda Glick's wife – plaintiff Yaffa Glick – and his children and foster children – Neria David Glick, Shlomo Glick, Hallel Glick, S.G., R.T. and T.T. – suffered severe psychological and emotional injuries as a result of the attack in which plaintiff Yehuda Glick was shot and severely physically injured.

86.     On October 30, 2014, the PIJ issued a statement claiming responsibility for the attack. Senior PIJ leaders referred to the attack as "heroic."

87.     The defendants conspired and acted in concert with PIJ, in pursuit of their common goals, design and agreements with PIJ, discussed above, to carry out the October 2014 Terrorist Shooting, and other such acts of extrajudicial killing and international terrorism, and the October 2014 Terrorist Shooting was carried out by PIJ further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

88.     PIJ carried out the October 2014 Terrorist Shooting utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the October 2014 Terrorist Shooting and other such acts of extrajudicial killing and international terrorism.

*Avni/Lakin Plaintiffs - Bust 78 Attack – October 13, 2015*

89.     On the morning of October 13, 2015, agents and operatives of Hamas, Bilal Abu-Ghanem and Bahaa Alian, one armed with a gun and the other with a knife, boarded Jerusalem Bus number 78 and, acting on behalf of Hamas, began shooting and stabbing the passengers (the "Bus 78 Attack").

90.     Two Israelis were killed instantly and at least 16 others were wounded, among them decedent Richard Lakin. Decedent Richard Lakin was shot in the head and stabbed in the face and chest. He suffered severe injuries and was taken to the hospital in critical condition. He remained in a medically induced coma and underwent multiple emergency surgeries during the two weeks following the attack before he died on October 27, 2015.

91.     Plaintiffs Micah Lakin Avni and Manya Lakin were devastated by the brutal attack on their father which left him in a coma for two weeks, and by his subsequent untimely death. They suffered severe psychological emotional harm as a result of the attack.

92.     Hamas praised the attack, stating it is "a message to anyone who harms our holy places," and calling for a continuation of "the intifada." Hamas further created a video reenactment of the attack and published it on the Facebook page of one of its West Bank affiliates.

93.     The defendants conspired and acted in concert with Hamas, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the Bus 78 Attack, and other such acts of extrajudicial killing and international terrorism, and the Bus 78 Attack was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

94.     Hamas carried out the Bus 78 Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the Bus 78 Attack and other such acts of extrajudicial killing and international terrorism.

*Moses/Moriah Shitrit Plaintiffs - Terrorist Shooting - March 6, 2008*

95.     On March 6, 2008, at approximately 8:30 pm, an agent and operative of Hamas, Alaa Abu Dhein, arrived at the Mercaz HaRav Yeshiva in Jerusalem, Israel and, acting on behalf of Hamas, opened fire with an automatic weapon on hundreds of yeshiva students (the "March 2008 Terrorist Massacre").

96.     Eight young high school students were murdered in the attack, including the decedent Avraham David Moses. Many other students were wounded in the massacre, including plaintiff Naftali Shitrit who suffered severe physical injuries.

97.     The family members of decedent Avraham David Moses and plaintiff Naftali Shitrit were devastated by the tragedy. They all suffered severe psychological emotional harm as a result of the attack.

98.     Following the attack, Hamas issued a statement that it "blesses the (Jerusalem) operation. It will not be the last." Hamas has also publicly claimed responsibility for the attack, both in its immediate aftermath and years later.

99.     The defendants conspired and acted in concert with Hamas, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the March 2008 Terrorist Massacre, and other such acts of extrajudicial killing and international terrorism, and the March 2008 Terrorist Massacre was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

100.     Hamas carried out the March 2008 Terrorist Massacre utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the March 2008 Terrorist Massacre and other such acts of extrajudicial killing and international terrorism.

*Brauner Plaintiffs - Terrorist Rocket Attack August 19, 2011*

101.     Between August 18 and August 19, 2011, Hamas and other terrorist organizations operating in the Hamas controlled Gaza strip bombarded Israeli civilian population centers with approximately 160 terrorist rockets. The rockets hit Israeli cities, including Beersheva, Ashdod, Ashkelon, Ofakim and Yavne.

102.    On August 19, 2011, Hamas or another terrorist organization operating in the Hamas controlled Gaza strip launched a rocket into Israel which hit a synagogue in Ashdod severely injuring plaintiff Shmuel Zev Shimon Brauner and wounding ten others (the "2011 Terrorist Rocket Attack").

103.    As a result of the 2011 Terrorist Rocket Attack, plaintiff Shmuel Zev Shimon Brauner suffered shrapnel wounds in his stomach and back, lost a kidney and part of his small intestine and was hospitalized in critical condition for ten days. Plaintiff Shmuel Zev Shimon Brauner became permanently disabled as a result of the 2011 Terrorist Rocket Attack and continues to suffer severe physical, psychological and emotional injuries.

104.    Plaintiff Shmuel Zev Shimon Brauner's parents – plaintiffs Mordechai and Esther Chaya Brauner, wife – plaintiff Nechama Brauner and minor son – plaintiff C.Y.B., all suffer severe psychological and emotional injuries as a result of the 2011 Terrorist Rocket Attack. Plaintiffs M.H.B. and Y.A.L.B, the minor children of plaintiff Shmuel Zev Shimon Brauner who were born after the attack also suffer psychological and emotional injuries resulting from the 2011 Terrorist Rocket Attack that severely injured their father.

105.    As the ruling entity in the Gaza Strip, Hamas has the ability to control and stop rocket fire from Gaza into Israel and is responsible for all rockets fired from Gaza into Israel.

106.    The defendants conspired and acted in concert with Hamas, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the 2011 Terrorist Rocket Attack, and other such acts of extrajudicial killing and international terrorism, and the 2011 Terrorist Rocket Attack was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

107.    Hamas carried out the 2011 Terrorist Rocket Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the 2011 Terrorist Rocket Attack and other such acts of extrajudicial killing and international terrorism.

*Parnas Plaintiffs - Terrorist Rocket Attack November 21, 2012*

108.    Between November 14 and 21, 2012, Hamas and other terrorist organizations operating in the Hamas controlled Gaza strip bombarded Israeli civilian population centers with more than 1,506 rockets, some reaching as far as Jerusalem and Tel Aviv. The rocket fire made life unbearable for more than 3.5 million Israelis.

109.    On November 21, 2012, the residence of plaintiff Daniella Schwadron Parnas and her children, plaintiffs Noa Parnas, Dana Parnas and A.P. was hit by a rocket fired by Hamas or another terrorist group operating in Hamas controlled Gaza and sustained serious damage, including fire, water damage, broken windows and shrapnel damage (the "2012 Terrorist Rocket Attack"). The damage was so extensive that the house was uninhabitable for approximately six months until repairs were completed.

110.    Plaintiff Daniella Schwadron Parnas's elderly mother was home during the 2012 Terrorist Rocket Attack, but managed to seek shelter in time and was not physically injured. Plaintiff Daniella Schwadron Parnas was not at home at the time, having just left to run an errand at the local supermarket, but she was in the nearby vicinity and was forced to run for cover when the rocket siren sounded.

111.    Minor plaintiff A.P., aged seven and a half at the time, was staying with a relative nearby and was forced to run for cover when the rocket siren sounded. Plaintiffs Noa and Dana

Parnas were not home at the time, but returned home as soon as they heard the news and were shocked and devastated to see the extensive damage to their home as a result of the rocket hit.

112.   Plaintiffs Daniella Schwadron Parnas, Noa Parnas, Dana Parnas and A.P. all suffer severe psychological and emotional injuries as a result of the 2012 Terrorist Rocket Attack in which their home was directly hit by a terrorist rocket.

113.   As the ruling entity in the Gaza Strip, Hamas has the ability to control and stop rocket fire from Gaza into Israel and is responsible for all rockets fired from Gaza into Israel.

114.   The defendants conspired and acted in concert with Hamas, in pursuit of their common goals, design and agreements with Hamas, discussed above, to carry out the 2012 Terrorist Rocket Attack, and other such acts of extrajudicial killing and international terrorism, and the 2012 Terrorist Rocket Attack was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

115.   Hamas carried out the 2012 Terrorist Rocket Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the 2012 Terrorist Rocket Attack and other such acts of extrajudicial killing and international terrorism.

**FIRST CLAIM FOR RELIEF**
**ON BEHALF OF THE AMERICAN PLAINTIFFS**
**FOR DAMAGES UNDER 28 U.S.C. §1605A(c)**

116.   The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

117.   Iran is a foreign state that since 1984 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

118.    Syria is a foreign state that since 1979 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

119.    The defendants provided material support and resources to Hamas and PIJ, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the October 2014 Terrorist Shooting, the Bus 78 Attack, the January 2016 Terrorist Stabbing, the March 2008 Terrorist Massacre, and the 2011 and 2012 Terrorist Rocket Attacks.

120.    Decedent Taylor Force was murdered in the March 2016 Terrorist Stabbing. The murder of Taylor Force caused decedent and his estate severe injury, including: conscious pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

121.    Plaintiff Menachem Mendel Rivkin suffered severe physical, psychological, emotional and other injuries as a result of the January 2016 Terrorist Stabbing, including: disfigurement, loss of physical and mental functions, extreme pain and suffering; loss of guidance companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium; and loss of future income.

122.    Plaintiff Yehuda Glick suffered severe physical, psychological, emotional and other injuries as a result of the October 2014 Terrorist Shooting, including: disfigurement, loss of physical and mental functions, extreme pain and suffering; loss of guidance companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium; and loss of future income.

123.    Decedent Richard Lakin was mortally wounded in the Bus 78 Attack and died of his wounds two weeks later. The murder of Richard Lakin caused decedent and his estate severe injury, including: conscious pain and suffering; pecuniary loss and loss of income; loss of

guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

124.    Decedent Avraham David Moses was murdered in the March 2008 Terrorist Massacre. The murder of Avraham David Moses caused decedent and his estate severe injury, including: conscious pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

125.    Plaintiff Naftali Shitrit suffered severe physical, psychological, emotional and other injuries as a result of the March 2008 Terrorist Massacre, including: disfigurement, loss of physical and mental functions, extreme pain and suffering; loss of guidance companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium; and loss of future income.

126.    Plaintiff Shmuel Zev Shimon Brauner suffered severe physical, psychological, emotional and other injuries as a result of the 2011 Terrorist Rocket Attack, including: disfigurement, loss of physical and mental functions, extreme pain and suffering; loss of guidance companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium; and loss of future income.

127.    Plaintiffs Daniella Schwadron Parnas, Noa Parnas, Dana Parnas and A.P. suffered severe psychological, emotional and other personal injuries as a result of the 2012 Terrorist Rocket Attack, including: loss of guidance companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium; and pecuniary loss and loss of income.

128.     The other American plaintiffs herein, the family members of decedent Taylor Force, plaintiff Menachem Mendel Rivkin, plaintiff Yehuda Glick, decedent Richard Lakin, decedent Avraham David Moses, plaintiff Naftali Shitrit and plaintiff Shmuel Zev Shimon Brauner, all suffered severe psychological, emotional and other personal injuries as a result of the respective terrorist attacks in which their loved ones were killed or severely physically injured, including: extreme pain and suffering; loss of guidance companionship and society; loss of consortium; severe emotional distress and mental anguish and loss of solatium.

129.     As a direct and proximate result of the conduct of the defendants' conduct, plaintiffs suffered the injuries and harm described herein.

130.     The defendants are therefore jointly and severally liable under 28 USC 1605A(c) for the full amount of plaintiffs' damages.

131.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

**SECOND CLAIM FOR RELIEF**
**ON BEHALF OF ALL PLAINTIFFS**
**NEGLIGENCE**
**(Under the Law of the State of Israel)**

132.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

133.     Pursuant to Fed. R. Civ. P. 44.1 plaintiffs hereby give notice of their intention to rely on the law of the State of Israel.

134.     Causes of action in tort in Israeli law are codified in the Civil Wrongs Ordinance (New Version) - 1968, (hereinafter "CWO").

135.    The CWO provides that any person injured or harmed by the civil wrongs (i.e. torts) enumerated in the CWO is entitled to relief from the person liable or responsible for the wrong.

136.    CWO § 35 creates a tort of Negligence.

137.    Under binding precedent of the Israeli Supreme Court, the tort of Negligence also includes intentional and/or reckless conduct.

138.    CWO § 35 provides that a person is liable for the tort of Negligence when he commits an act which a reasonable and prudent person would not have committed under the same circumstances; or refrains from committing an act which a reasonable and prudent person would have committed under the same circumstances; or, in the performance of his occupation, does not use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, and thereby causes damage to another person toward whom, under those circumstances he is obligated not to act as he did.

139.    CWO § 36 provides that the obligation stated in the last sentence of § 35 is toward all persons, to the extent that a reasonable person would have under the same circumstances foreseen that, in the ordinary course of events, they were liable to be injured by the act or omission.

140.    By providing material support to Hamas and PIJ, the defendants performed acts which a reasonable and prudent person would not have committed under the same circumstances, within the meaning of the CWO.

141.    Defendants did not, in the performance of their occupations, use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation

would have used or exercised under the same circumstances, within the meaning of the CWO, in that, inter alia, defendants provided material support to Hamas and PIJ.

142.    Defendants acted negligently in connection with the decedents and the plaintiffs, toward whom, in the circumstances described herein, defendants had an obligation not to act as they did. Defendants were obligated not to act as they did because a reasonable person would, under the same circumstances, have foreseen that, in the ordinary course of events, persons such as the decedents and the plaintiffs were liable to be harmed by the acts of defendants described herein.

143.    The behavior of defendants constitutes Negligence under the CWO, and that negligent behavior was the proximate cause of the harm to decedents (Taylor Force, Richard Lakin and Avraham David Moses), to the physically injured plaintiffs (Yehuda Glick, Menachem Mendel Rivkin, Naftali Shitrit and Shmuel Zev Shimon Brauner) and to their respective family members – the other plaintiffs herein – which includes: death; conscious pain and suffering; loss of pecuniary support; loss of income; loss of consortium; emotional distress; loss of society and companionship and loss of solatium.

144.    Defendants are therefore liable for the full amount of the compensatory damages due to the estate of the decedents and to each of the plaintiffs herein.

145.    Under Israeli case law a plaintiff harmed by an act of Negligence caused by intentional conduct is entitled to punitive damages.

146.    The conduct of defendants was intentional and malicious, and so warrants an award of punitive damages under Israeli law.

### THIRD CLAIM FOR RELIEF
### ON BEHALF OF ALL PLAINTIFFS
### AIDING AND ABETTING
### (Under the Law of the State of Israel)

147.   The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

148.   Defendants knowingly and intentionally provided material support and resources to Hamas and PIJ which enabled, facilitated, supported and assisted Hamas and PIJ to carry out the March 2016 Terrorist Stabbing, the January 2016 Terrorist Stabbing, the October 2014 Terrorist Shooting, the Bus 78 Attack, the March 2008 Terrorist Massacre and the 2011 and 2012 Terrorist Rocket Attacks.

149.   Aiding and Abetting principles are recognized in § 12 of the CWO, which provides that a person who participates in, assists, advises or solicits an act or omission, committed or about to be committed by another person, or who orders, authorizes, or ratifies such an act or omission, is liable for such act or omission.

150.   Defendants knowingly and intentionally assisted Hamas and PIJ to carry out the March 2016 Terrorist Stabbing, the January 2016 Terrorist Stabbing, the October 2014 Terrorist Shooting, the Bus 78 Attack, the March 2008 Terrorist Massacre and the 2011 and 2012 Terrorist Rocket Attacks and are therefore liable for the full amount of damages due to the estate of the decedents (Taylor Force, Richard Lakin and Avraham David Moses), to the physically injured plaintiffs (Yehuda Glick, Menachem Mendel Rivkin, Naftali Shitrit and Shmuel Zev Shimon Brauner) and to their respective family members – the other plaintiffs herein – under CWO § 12.

151.   The conduct of defendants was intentional and malicious, and so warrants an award of punitive damages under Israeli law.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues legally triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs demand judgment as follows:

(a)  Judgment against all defendants, jointly and severally, for compensatory damages in an amount to be determined at trial;

(b)  Judgment against all defendants, jointly and severally, for punitive damages in an amount to be determined at trial;

(c)  Plaintiffs' costs and expenses;

(d)  Plaintiffs' attorneys fees; and

(e)  Such other and further relief as the Court finds just and equitable.

Dated: July 14, 2016
Brooklyn, New York

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Counsel for Plaintiffs*

By: _____
    Robert J. Tolchin
    (D.C. District Court Bar #NY0088)

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943

NITSANA DARSHAN-LEITNER & CO.
NitsanaDarshan-Leitner
*Israeli counsel for the plaintiffs*
10 Hata'as Street
Ramat Gan, 52512 Israel
Israeli #: 011-972-3-7514175
U.S. #: 212-591-0073