UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------x

STUART FORCE, *et al.,*

                  Plaintiffs,                Civ. No. 16-01468 (RDM)

    v.

THE ISLAMIC REPUBLIC OF IRAN, *et al.,*

                  Defendants.

------------------------------------------------------------x

## DECLARATION OF BOAZ SHNOOR

I. Dr. Boaz Shnoor, of Jerusalem, Israel, declares pursuant to 28 U.S.C. § 1746 as follows:

### A.    Professional Background

1.    I am a senior lecturer at the Academic Center of Law and Business in Ramat Gan, Israel and have been a faculty member since 2004. During this time I also held positions teaching law at the Faculty of Law of Hebrew University in Jerusalem, Israel, at the College of Management (Academic Studies Division) in Rishon Letzion, Israel, and at the Shaarei Mishpat College in Hod HaSharon, Israel. During the academic year 2010-2011 I was a visiting scholar at Cornell Law School.

2.    My teaching and research fields focus primarily on Israeli tort law, psychological analysis of law, honor and libel, and environmental law. I am the author of the book Torts and Pollution (2011, Sacher Institute) (Hebrew), co-author of the book Libel Law - De Lege Lata and De Lege Ferenda (2005, Sacher Institute)

(Hebrew), and have authored and co-authored numerous other academic and

professional papers on Israeli tort law and other legal topics.

3.        I hold LL.D, LL.M and LL.B degrees from the Hebrew University. My

doctoral dissertation dealt with toxic torts. I am a member of the Israel Bar and

licensed to practice law in the State of Israel. A copy of my curriculum vitae, which

includes all publications authored by me in the past 10 years, is attached hereto as

Exhibit A.

4.        During the last decade I have served as a consulting expert witness on

issues related to Israeli tort law and liability for terrorist attacks in a number of cases.

**B.        Nature of this Expert Witness Report**

5.        I have been asked by counsel for the Plaintiffs in the above-captioned

matter to describe and opine upon Israeli law regarding the tortious liability of the

Defendants under Israeli law for the actions described in ¶¶ 62-115 (hereinafter: the

terrorist attacks) of the Complaint in the above-captioned matter (hereinafter: the

Complaint) and for the harm caused to the Plaintiffs.

6.        For the purposes of this Report I will rely on the facts as they were

described in the Complaint and treat them as true. I will also rely on the Expert

Reports by Spitzen, dated February 23, 2018 ("Spitzen Report"); by Deeb, dated

January 8, 2018 ("Deeb Report"); by Levitt, dated February 20, 2018 ("Levitt

Report"); by Clawson, dated February 21, 2018 ("Clason Report"); and by Berti,

dated May 11, 2017 ("Berti Report").

7.        The bases for my opinion as set forth herein are my professional and

academic legal studies, research, teaching, and publishing over the course of many

years, as well as the statutes, case law, and authorities cited in this Declaration.

## C.   The Tortious Liability of the Defendants under Israeli Law

8.     In my professional expert opinion, to a reasonable degree of legal certainty, if this matter was before an Israeli court and evaluated under Israeli law, the Defendants would be held liable in tort to the Plaintiffs under the applicable provisions of the Civil Wrongs Ordinance [New Version] 5728-1968 ("CWO") under applicable Israeli law.

9.     Defendants' liability arises from either or all of the following theories:

a.     Vicarious Liability: Given the agreements between the Defendants on the one hand, and Hamas and PIJ on the other,  Defendants' liability would arise under Article 14 of the CWO which addresses liability of principles to the acts of agents.

b.     Aiding, counseling, commanding or procuring the Hamas and Palestinian Islamic Jihad (PIJ) terrorists in the terrorist attacks: Given the aid, support and assistance supplied by Defendants to the terrorists, Defendants' liability would arise under Article 12 of the CWO which addresses liability of persons joining in or procuring an act.

c.     Direct liability under negligence of Defendants: Supplying aid, support and assistance to terrorist organizations is a careless activity, and a reasonable defendant would foresee that such actions might result in terrorist attacks  such as the ones described in the Complaint. Therefore, such actions will result in the Defendants' liability.

10.     As Defendants' liability may be (in addition to their direct liability) derived from the liability of Hamas and PIJ (which in turn might be either direct or derived from the tortious liability of the terrorists themselves), I will first analyze

3

below the Hamas and PIJ terrorists' direct liability according to the Israeli civil torts of negligence, battery, assault, and breach of statutory duty. Subsequently, I will analyze Hamas' and PIJ's liability, and then move on to the Defendants' liability for aiding the terrorists in their tortious actions and direct liability for negligence.

11.    Before I begin the detailed analysis, I would like to note that after following Israeli courts' decisions for many years it is my impression that in cases of legal doubt Israeli courts tend to rule in favor of terrorist victims. They also tend to rule in cases of doubt against people who intentionally and voluntarily harm other people. In this case, I think there is no such legal doubt, but if it existed, it would have been probably resolved in favor of the plaintiffs.

12.    For the purposes of this report, I will assume that missile launching on civilian targets by terrorist organizations is forbidden according to international law and constitutes a war crime (see e.g. Yoram Dinstein, Air and Missile Warfare under International Humanitarian Law, 52 *Mil. L. & L. War Rev.* 81, 87 (2013)).

### D.    Direct Liability of the Hamas and PIJ Terrorists

#### *Negligence*

13.    The terrorist attacks amount to negligence according to Articles 35-36 of the CWO. It is noteworthy to mention before analyzing the terrorists' negligence that Israeli Law holds that the tort of negligence encompasses not only negligent acts, but also intentional acts, as long as they are unreasonable acts that caused foreseeable harm (CA 4486/11 *Doe v. Doe* ¶ 10 (7.15.2013) (The defendant doctor did not warn a mother of the special risks involved in her pregnancy, and was sued for the resulting harm to the baby); CA 2034/98 *Amin v. Amin* PD 53(5) 69, 81 (1999)) (A widowed

father who, after being re-married, refused to take care of his children for years was held liable in negligence for the harm caused to them).

14.   As such, an Israeli Court would necessarily find that the intentional terrorist attacks encompass a negligence theory in this particular case.

15.   The tort of negligence provided for in the CWO consists of four elements: a duty of care; breach of a duty of care (i.e. carelessness); proximate cause (sometimes divided to cause-in-fact and legal causation); and harm. *See e.g.*, CA 243/83 *City of Jerusalem v. Gordon*, P.D. 39(1) 113, 128 (1985) (The City of Jerusalem was held liable in negligence for the negligent false imprisonment of Plaintiff).

### *Duty of Care*

16.   The duty of care element is sometimes divided between the conceptual duty of care and concrete duty of care (CA 1167/11 *Doe v. Doe* (11.18.2013)) (A Kibbutz owes a conceptual duty of care [but not a concrete one, due to the circumstances of the case] to the children residing within the kibbutz, to protect them against sexual assault by other minors living in the kibbutz). However, it has been said repeatedly by the Israeli Supreme Court that a conceptual duty of care always, or almost always, exists, (CA 915/91 *Levi v. The authority for regulating the Insurance market* P.D. 48(3) 45, 67 (the State's insurance authority owes a conceptual duty of care to an insured person who could not collect his insurance money after an accident due to his insurance company's liquidation); CA 10078/03 *Shtil v. The State of Israel* (3/19/2007) (the State owes a duty of care to a farmer to provide water that is suited to his crops) and therefore it has been suggested to abolish it altogether. Moreover, Israeli courts analyze this element by using policy considerations and therefore there is no separate need to establish proof on that point.

17.   According to Israeli tort law a duty of care (both conceptual and concrete) is presumed to exist whenever a reasonable person could have foreseen that the conduct at issue could cause harm of the type alleged (*City of Jerusalem, id.* at 131-132), as was obviously the case in the circumstances of the terrorist attacks. Therefore it is my opinion that to a reasonable degree of legal certainty, under Israeli law, any Israeli court would find that the Hamas terrorists owed both a conceptual and concrete duty of care to the victims of the terrorist attacks.

18.   The breach of duty element is a factual element, and in my professional opinion to a reasonable degree of legal certainty, the facts as pled in the Complaint evidence a breach of duty owed to the victims. (CA 796/80 *Ohana v. Avraham* P.D. 37(4) 337 (1983) (negligence claim against a soldier [and the army] for the several killings that were caused when the soldier stole a grenade from the army and threw it into a night club)).

19.   Stabbing and shooting innocent victims are intentional criminal actions, which any court would consider careless and a breach of duty to the victims. Shooting rockets on civilians is not only a crime of war, but Israeli courts have deemed it murder when it caused death (CrimA 6414/11 *Hamid v. State of Israel* (Dec. 23, 2013)), and therefore any Israeli court would consider it careless and a breach of duty to the victims.

### Causation

20.   Furthermore, in my professional opinion to a reasonable degree of legal certainty, under Israeli law, the causation element of negligence, both causation in fact and legal causation (proximate cause), would have been met in an action by Plaintiffs against the Hamas and PIJ terrorists.

21.   Cause in fact is generally determined in Israel according to the "but for" test (CA 145/80 *Va'aknin v. The City of Beit Shemesh*, P.D. 37(1) 113, 144 (a teenager who was severely injured after diving into a pool sued the pool for lack of signs prohibiting such diving)). The question is a factual one. In this case it is clear that "but for" the terrorists' actions, the victims would not have suffered any damage.

22.   There are three different tests for determining legal causation: proximity, zone of risk, and common sense (CA 2028/99 *Pe'er v. Silovat Inc.* P.D. 55(3) 493, 500 (An engineer was held liable in negligence for the harm caused because he failed to adequately warn the owners of the risks involved when a building that was not built according to his plans collapsed). However, the main fact that determines the result of all three tests is foreseeability – the ability of the reasonable person to foresee the harm (CA 8199/01 *Miro v. Miro*, P.D. 57(2) 785, 791-792 (a policeman on vacation negligently carried a loaded gun in a party. A family member, thinking it was unloaded, grabbed it and shot another family member. The policeman and the police force were held liable)). If a reasonable person could have foreseen that a harm of the kind that happened might happen, the legal causation requirement is met. Again, it is clear that the terrorists could have, and actually did, foresee the tragic results of the terrorist attacks, and therefore the proximate cause element is satisfied in this case.

23.   The element of harm is also satisfied in this case since the definition of "harm" in Article 2 of the CWO is: "loss of life, or loss of, or detriment to, any property, comfort, bodily welfare, reputation, or other similar loss or detriment".

24.   Therefore, it is my professional opinion to a reasonable degree of legal certainty that the Israeli law would hold the Hamas and PIJ terrorists negligent and liable for the harm caused to the victims of the terrorist attacks.

7

*Battery and Assault*

25.    The following Hamas and PIJ terrorist attacks – the terrorist stabbing of March 8 2016; the terrorist stabbing of January 27, 2016; the shooting attack of October 29, 2014; the bus 78 attack of October 13, 2015; the terrorist shooting of March 6, 2008; the terrorist rocket attack of August 19, 2011 – all amount to assault and battery under Israeli Law under Article 23 of the CWO as interpreted by the courts. The terrorist rocket attack of November 21, 2012 amounts to assault, though not to battery.

26.    Under Israeli Law, in order to succeed in an action for assault, a plaintiff has the burden of proving the following elements:

        a.  The defendant knowingly (*see e.g.,* CA 1272/05 *Karmi v. Sabag* (2007) (even a legally incompetent person might be liable in battery if he was aware of the physical nature of his actions);

        b.  Attempted or threatened by any act or gesture to use force against another person;

        c.  Making the other believe upon reasonable grounds that he has the present intention and ability to affect his purpose.

27.    The facts concerning the terrorist attacks fulfill all of these requirements: The terrorist attacks involved the threat to use force, making the victims believe that they have present intention and ability to affect their purpose. Therefore there is not a doubt in my mind that any Israeli court would have found the Hamas and PIJ terrorists, sponsored and supported by the Defendants, liable for the terrorist attacks through the civil tort of Assault under Article 23 of the CWO.

8

28.    Under the same Article of the CWO, in order to succeed in an action for battery, a plaintiff has the burden of proving the following elements:

> a.   The defendant knowingly (*see e.g.*, CA 1272/05 *Karmi v. Sabag* (2007) (even a legally incompetent person might be liable in battery if he was aware of the physical nature of his actions);
>
> b.   Used force – either directly or indirectly;
>
> c.   Against the body of another person;
>
> d.   Without the consent of that person.

29.    The facts concerning the terrorist stabbing of March 8, 2016; the terrorist stabbing of January 27, 2016; the shooting attack of October 29, 2014; the bus 78 attack of October 13, 2015; the terrorist shooting of March 6, 2008; and the terrorist rocket attack of August 19, 2011 fulfill all of these requirements. In all of these cases the terrorists used force, either directly or indirectly, against the bodies of the victims without the victims' consent.

30.    The facts concerning the terrorist rocket attack of November 21, 2012 did not involve the actual use of force against the body of another person, since luckily the attack resulted only in property and emotional harm. Therefore, that attack cannot be regarded as battery. However, it can be regarded as assault.

31.    Therefore there is not a doubt in my mind that any Israeli court would have found the Hamas terrorists, sponsored and supported by the Defendants, liable for the terrorist attacks through the civil tort of battery and assault under Article 23 of the CWO.

### *Breach of Statutory Duty.*

32.    In order to succeed in an action for breach of statutory duty as it is defined in Article 63 of the CWO, the plaintiff has to prove that the defendant

violated a statutory duty that is meant to protect the plaintiff from the kind of harm that was done to them, and that this violation caused harm to the plaintiff.

33.   In committing the terrorist attacks, the terrorists violated a number of criminal statutes, including the criminal offenses of murder (Article 300 of the Criminal Law, 5733 – 1977), and/or attempted murder (Article 305 of the Criminal Law, 5733 – 1977), assault with aggravated intent (Article 329 of the Criminal Law, 5733 – 1977), and more.

34.   Israeli courts have ruled that criminal offences can be used as duties for the purpose of this tort (*see e.g.*, CA 245/81 *Sultan v. Sultan* 38(3) P.D. 169 (1984) (defendant was held liable for the damages caused to his former wife under breach of statutory duty after he divorced her without her consent and without court's authorization thus committing a crime) and such reliance is indeed common.

35.   Indeed, in CA 7141/13 *Connective Group v. Dabush* (unpublished, Nov. 5, 2015) (a class action was filed by participants of an online "public bidding" site against the site. The claim was that the "bidding" was actually forbidden gambling, and therefore illegal, which means that the site would have to return all the participation fees to the participants. The court denied the class action). Justice Mazuz stated that usually the tort of breach of statutory duty cannot be based on criminal offences, citing cases from the 1960s. However, even according to Justice Mazuz, in cases where there is a clear criminal and a clear victim and it is clear that the criminal offence is not meant to protect only society at large, but also individuals, as in our case, there is an option to use the criminal violation as the basis for breach of statutory duty. Moreover, and more importantly, Justice Barak-Erez, citing more recent cases, said that this opinion does not represent the opinion of the court and that in the last decades the rule has been, and should be, that criminal violations can serve as a basis

10

for this tort (the third justice in the paned decided the case on other grounds). A request for rehearing was denied since no new legal rule was established in the case, and since justice Mazuz`s opinion was not a majority opinion (RH 8253/15 *Dabush v. Connective Group* (unpublished, Jan. 5, 2016). Therefore, in my opinion Justice Mazuz`s opinion is not the binding rule in Israel.

36.   The Israeli Supreme Court found that the requirement that a defendant's breach of a statutory duty was meant to protect the plaintiff is satisfied even if the statute is meant to protect Israeli society in general and the whole public, including the plaintiff (*Va'aknin, id.* At 135-137). Only in the rare cases where the statutory duty is meant to protect *only* Israeli society as a whole or the State of Israel and *not* individual members of Israeli society, or in the cases when a statute is meant to protect only one segment of the public (i.e. women, minorities) to which the plaintiff does not belong, will this requirement not be met. All these rare exemptions do not apply in the present case. Accordingly, in my professional opinion to a reasonable degree of legal certainty, the terrorists did breach a statutory duty meant to protect the victims.

37.   The proximate cause element (both cause in fact and legal causation) of the breach of a statutory duty tort is quite similar to the proximate cause element found in negligence.   Therefore, the proximate cause element is satisfied for the breach of a statutory duty cause of action for the same reasons it was satisfied in a negligence action as applied to the facts of this case. See section D, paragraph 20.

38.   Therefore, it is my professional opinion to a reasonable degree of legal certainty that under Israeli Law, the terrorists would be held liable in breach of statutory duty for the harms caused to the victims.

### E.   Hamas and PIJ Liability

39.   Before delving into Hamas and PIJ's liability, I would note that to the best of my knowledge, in all civil cases in which it was proved that a terrorist belonging to a terrorist organization (be it Hamas, PIJ, or the PLO) committed an act of terrorism that resulted in property harm or bodily injury, the organization was held liable for those damages (see e.g. CA 2144/13 *Mentin v. The Palestinian Authority* (Dec. 6, 2017); CC (Jer.) 3361/09 *Estate of Ben Shalom v. The Palestinian Authority* (Sep. 22, 2014) (and see the list of prior cases on P. 24); CC (Jer.) 3050/09 *Perlman v. Hamas* (Jun. 15, 2015); CC (Jer.) 4421/02 *Gavish v. Hamas* (Jan. 22, 2006).

40.   Article 14 of the CWO holds that a principal is liable for any act done by an agent in the process of fulfilling his duties as an agent. The liability of the principal is strict and it does not matter whether he intended the agent to perform the tort or not, whether he knew about the possibility of the happening of the tort or not, or whether he was negligent in hiring the agent. Under Israeli law, the mere fact that the agent was indeed the principal's agent is sufficient to deem the principal liable for any tort done by the agent in the course of fulfilling the agency (CA 502/78 *The State of Israel v. Nissim*, PD 35(4) 748 (1981) (a principal was held liable for a car accident that was caused by the agent's negligent driving)).

41.   The meaning of agency under Israeli law has been somewhat vague (C.A. 675/75 *Middle East Pipes v. Shaebi*, PD 31(3) 225, 229 (1977)). The common formulation is that a person becomes an agent if he substitutes the principal in fulfilling a mission; if the agent is the "long hand" of the principal (*Nissim*, at 755; C.A. 273/80 *Medinah v. Cohen* PD 37(2) 29, 38 (1983)). For example, company A would be considered the agent of company B, if the actions of company A are an integral part of the business of B.

12

42.   According to the facts stated in ¶¶ 69, 76, 82, 89, 95, 101-102 and 108-109 of the Complaint, and in the Spitzen Report (see especially ¶¶ 127-128, 154-163, 183-189, 236-239, 246-266, 297-301, 309-310, 358-369) the terrorists were agents of Hamas and PIJ and the terrorist attacks were done on their behalf . Therefore, it is my professional opinion to a reasonable degree of legal certainty that under Israeli Law, Hamas and PIJ would be held vicariously liable for the harms caused to the victims.

**F.   Defendants' Vicarious Liability**

43.   As discussed above, Article 14 of the CWO holds that a principal is liable for any act done by an agent in the process of fulfilling his duties as an agent. According to the facts stated in the Deeb Report (see especially ¶¶ 30-31), in the Spitzen Report (see especially ¶¶ 267-279), in the Levitt Report (see especially ¶¶ 40-88, 107-114), in the Clawson Report (see especially ¶¶ 30-70), and in the Berti Report (see especially ¶¶ 34-55, 58-66), it is clear that Iran and Syria considered terrorist attacks to be their goals. Terror was part of the "business" of Iran and Syria, and since they couldn't fulfill this goal directly, they "hired" Hamas and PIJ to commit the terrorist attacks for them. Therefore, Hamas and PIJ were the agents of the Defendants in carrying out terrorist attacks, including the ones described in the Complaint.

44.   Therefore, it is my professional opinion to a reasonable degree of legal certainty that Israeli courts would hold the Defendants vicariously liable for the terrorists actions through Article 14 and any or all of the civil wrongs of negligence (Articles 35-36 of the CWO), breach of statutory duty (Article 63 of the CWO), and battery, and assault (Article 23 of the CWO).

13

### G.   Defendants' Liability - Aiding and Abetting

45.   Article 12 of the CWO states that anyone who helps another or encourages him to perform a civil wrong is liable as if he committed the wrong himself.

46.   Israeli courts have ruled that in order for a person to be liable according to this Article, a person should either aid the principal actor in performing a civil wrong (e.g. by providing the means or the opportunity to commit the civil wrong or by otherwise providing needed help) or encourage him to perform it, foreseeing that the principal actor is about to commit the wrong, even if the aider did not intend for the principal actor to commit a civil wrong (CA 6871/99 *Rinat v. Rom*, P.D. 56(4) 72, 81-82 (2002) (answering a reporter's questions does not lead to liability for libel under Article 12 of the CWO as long as the answers that were given did not constitute libel because Defendant could not foresee that the reporter will publish them in libelous way). More than that, in C.A. 5977/07 *Hebrew University v. Schocken Publishing House Ltd.*, (6/12/2011) it was decided that imposing liability under § 12 does not require satisfying the "but for" causation test. Rather, as long as the defendant's actions significantly contributed to the tortious actions of the direct tortfeasor, then liability can be imposed.

47.   In the instant case, it is clear from the facts as described in ¶¶ 50-68 of the Complaint, in the Deeb Report (see especially ¶¶ 30-31), the Spitzen Report (see especially ¶¶ 267-279), the Levitt Report (see especially ¶¶ 40-88, 107-114), the Clawson Report (see especially ¶¶ 30-70), and the Berti Report (see especially ¶¶ 34-55, 58-66) that the Defendants did in fact provide Hamas and PIJ with the means necessary to commit terrorist attacks. It is further clear that Iran and Syria assisted

14

Hamas and PIJ knowing it was foreseeable that this would result in Hamas and PIJ carrying out terrorist attacks against innocent civilians such as the victims.

48.    Therefore it is my expert opinion to a reasonable degree of legal certainty, that the Defendants would also be held liable under Israeli law for aiding (through Article 12 of the CWO) the battery, assault (Article 23 of the CWO), negligence (Articles 35-36 of the CWO), and breach of statutory duty (Article 63 of the CWO) that were conducted by the terrorists.

### H.    Defendants' Direct Liability in Negligence

49.    The Defendants would also be found directly liable in negligence for the terrorist attacks under Israeli law.

50.    As mentioned earlier (¶ 15), the tort of negligence contains four elements: a duty of care (sometimes divided between the conceptual duty of care and concrete duty of care); breach of a duty of care (i.e. carelessness); proximate cause (sometimes divided to cause-in-fact and legal causation); and harm.

51.    Under the conceptual duty of care the court asks itself whether - in relation to the *type* of people to which the defendant belongs, the *type* of plaintiffs to which the plaintiff belongs, the *type* of activity the defendant did, and the *type* of harm which was caused - the reasonable person could and should have foreseen the *type* of harm that was caused to the *type* of plaintiffs from the *type* of activity (CA 243/83 *City of Jerusalem v. Gordon*, P.D. 39(1) 113, 129 (1985)). Under this element, the court emphasizes general policy considerations, and disregards the details of the current case (CA 1167/11 *Doe v. Doe* (11.18.2013)).

52.    On the other hand, under the concrete duty of care the court delves into the details of the case and asks whether the specific defendant could and should have

15

reasonably foreseen the specific harm that was caused to the specific plaintiff. Here the court will emphasize pragmatic and fact specific considerations (C.A. 3521/11 *Vagner v. Abadi* ¶ 6, 8 (6/22/2014).

53.    In the current case, any government which funds and helps a terrorist organization and encourages it to commit terrorist activities in another country can, and should, reasonably foresee that the terrorist organizations will act in a manner that will cause bodily harm, property loss, and emotional harm to innocent people. Therefore, a conceptual duty of care between the Defendants and the Plaintiffs does exist.

54.    Moreover, given the specific facts of the terrorist attacks it seems that a concrete duty of care exists as well. Iran and Syria could, and should, have seen that the help, the material support, and encouragement they give to Hamas and PIJ might result in launching rockets on Israeli residential areas, and in the shooting and stabbing of Israeli and American citizens in Israel.

55.    Therefore, in my expert opinion, both conceptual and concrete duties of care exist in this case between the Defendants and the Plaintiffs.

56.    The Defendants' activities were clearly careless and will be deemed as a breach of the Defendants' duty of care. As stated in ¶¶ 50-68 of the Complaint, in the Deeb Report (see especially ¶¶ 30-31), in the Spitzen Report (see especially ¶¶ 267-279), in the Levitt Report (see especially  ¶¶ 40-88, 107-114), in the Clawson Report (see especially ¶¶ 30-70), and in the Berti Report (see especially ¶¶ 34-55, 58-66) ,the Defendants supplied massive financial support to the terrorist organizations with the intent of causing and facilitating the commission of acts of extrajudicial killings and international terrorism; and they did so in order to help Hamas and PIJ

terrorize the Jewish population in Israel. These actions would without doubt be considered as a breach of the Defendants' duty of care by any Israeli court.

57.   The Plaintiffs in this case clearly suffered harm.

58.   The cause in fact element is also satisfied in this case, since had it not been for the lengthy support of the Defendants, Hamas and PIJ would not have been able to develop the infrastructure, abilities, and methods required to enlist the terrorists who committed the terrorist attacks, and to carry them out. These facts suffice in order to find that cause in fact does exist in this case.

59.   As discussed above, the execution of the terrorist attacks and the resulting harms were a foreseeable result of the Defendants' actions, and indeed such acts and harms were actually foreseen by them at the time of the action. Hence, it is my expert opinion that proximate cause does exist in this case.

60.   Therefore, in my professional expert opinion, to a reasonable degree of legal certainty, if this matter was before an Israeli court and evaluated under Israeli law, the Defendants would be held liable in direct negligence to the Plaintiffs.

**I.   Conclusion – The Defendants' liability**

61.   As outlined above, it is my opinion to a reasonable degree of legal certainty that under applicable Israeli law as applied to the facts of this case, the Defendants, jointly and severally, would be held both directly and vicariously liable for the actions of the Hamas and PIJ terrorists who carried out the terrorist attacks.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE
LAWS OF THE UNITED STATES OF AMERICA THAT THE
FOREGOING IS TRUE AND CORRECT.

February 27, 2018

Dr. Boaz Shnoor

## Curriculum Vitae - Boaz Shnoor

### Education

1997 - 2004    LL. D (direct track), Law faculty, Hebrew University, Jerusalem
Doctoral advisor: Prof. Israel Gilead.
Dissertation topic: "Torts as a Means of Preventing Environmental
Pollution"
(submitted 2004, approved 2005)

1996 - 1999    LL.M., Law faculty, Hebrew University, Jerusalem (as part of
accelerated doctoral program)

1991 - 1995    LL.B., (*magna cum laude*), Law faculty, Hebrew University, Jerusalem

### Academic and Professional Experience

2013 -         Senior Lecturer - College of Law and Business
Courses: Tort Law, Environmental Law, Causation in Tort, The
psychology of judging

2010 – 2011 Visiting Scholar, Cornell University Law School

2004 - 2013 Lecturer - Academic Center of Law and Business
Courses: Tort Law, Environmental Law, Libel and Privacy Law,
Causation in Tort, Uncertainty in Tort Law

2002 - 2016 Adjunct Lecturer, Law faculty, Hebrew University, Jerusalem – Tort
Law, Environmental Law and Causation in Tort Law, Seminar in Libel
law

2002 - 2017 Adjunct Lecturer, School of Law, the College of Management,
Academic Studies, Rishon LeZion – Tort Law, Causation in Tort Law,
Seminar in the tortious protection of personal and economic interests

2007 – 2008 Adjunct Lecturer, Sha'arei Mishpat College - Tort Law

2003 - 2004 Adjunct Lecturer, Academic Center of Law and Business -
Environmental Law

2002 - 2004 Student advisor, Law faculty, Hebrew University, Jerusalem

1999 - 2002 Assistant student advisor, Law faculty, Hebrew University, Jerusalem

1994 - 2001 Teaching assistant in Corporate Law, Tort Law and Criminal Law, Law
faculty, Hebrew University, Jerusalem; Academic Center of Law and
Business

1994 - 1997  Ephraim Abramzon & Co., Law Offices (student, intern, lawyer)

1993 - 1996  Research assistant for Prof. Israel Gilead

1992 - 1993  Research assistant for Prof. Yoram Shahar

## Grants

2017 – 2018  The Consequences of Policy Changes regarding the use of Age Criteria in Organ Transplantation, *The Israel National Institute for Health Policy Research* 123,000 NIS (together with Eyal Katvan, Tamar Ashkenazi, Israel Doron, and Eitan Mor)

2015  Honor in a Changing Society, *Israel Science Foundation* Research Workshop Grant 68,000 NIS (together with Eyal Katvan)

2014  Lawyers (in)Civility in Courts – Empirical Research of Judges Attitudes, *Research Grant by the David Weiner Center for Lawyers Ethics and Professional Responsibility* 5,000 NIS (together with Eyal Katvan)

2013 - 2018  Kavod (honor) and its Legal Defense in Mandatory Palestine Values in "Melting Pot" Societies, *Israel Science Foundation* 360,000 NIS (together with Eyal Katvan)

## Journal Editing

2016 – 2017  Co-Editor, The Onati Socio-Legal Series, Too Few Judges: Regulating the Number of Judges in Society issue

1993 – 1994  Editor in Chief "Mishpatim" Law Review

1992 – 1993  Member of the Editorial Board "Mishpatim" Law Review

## Conference Organization

2016  Workshop on "Too Few Judges: Regulating the Number of Judges in Society". Onati International Institute for the Sociology of Law. Coordinator (with Marc Galanter, Eyal Katvan, Ulrike Schultz, Avrom Sherr)

2016  International Research Workshop of the Israel Science Foundation on "Honor in a Changing Society". Organizing committee (with Dr. Eyal Katvan) and Scientific Committee (with Prof. Miri Gur-Arye,

Prof. Yoram Shachar, Dr. Khalod Ghanayim and Dr. Eyal Katvan),
College of Law & Business, Ramat-Gan, Israel

## Public Committees

2015 - 2016 The Ministry of Health Public Committee for the Regulation of
Procedures regarding Living Organ Donors

2013        The Public Commission on Age as a Criteria for Receiving Organ
Donations

## College Committee Assignments

2013 -      Chairperson, Institutional Ethical Review Board

2011 –      Chairperson, Students' Disciplinary Appeals Board

2006 – 2010 Chairperson, Students' Disciplinary Board

## Other College Assignments

2013 - 2014 Drafting the College Tuition Regulations

2011 – 2012 Drafting the Law School *Ethics in Research* Regulations

2008 – 2011 Drafting the College Teaching Regulations

## Law School Assignments

2013 – 2014 Drafting the Law School Teaching Regulations

2005 - 2013 Founder and Academic Supervisor of the Environmental Law Clinic,
Academic Center of Law and Business

## Professional Memberships

2010 -      The Society for Empirical Legal Studies

2002 -      Israel Society for Ecology & Environmental Quality Sciences

1998 -      Adam Teva V'din - Israel Union for Environmental Defense

1996 -      Israeli Bar

## Boaz Shnoor – List of Publications

### Books

1. LIBEL LAW - DE LEGE LATA AND DE LEGE FERENDA  (2nd Ed., to be published 2018, The Sacher Institute and The Israel Democracy Institute, Heb., ___ pages) (with K. Genaim, M. Kremnitzer)

1a LIBEL LAW - DE LEGE LATA AND DE LEGE FERENDA  (2005, The Sacher Institute and The Israel Democracy Institute, Heb., 487 pages) (with K. Genaim, M. Kremnitzer)

2. TOXIC TORTS (2011, Nevo Publishing and The Sacher Institute, Hebrew University, Heb., 613 pages)

### Articles

3. "Sub Judice and Free Speech: Balancing the Right to a Fair Trial against Freedom of Expression in Israel" 18(1) *San Diego International Law Journal* ___ (2018) (with Doron Menashe)

4. *Din Udvarim* ___ 10(2) על הפרטי והמקצועי אצל עורכי דין ועל הכבוד שביניהם (2018) (with Eyal Katvan and Limor Zer-Gutman) (Heb.)

5. "Court's Precious Time: Transparency, Honor and Judicial Scarce Resources" 7(4) *Oñati Socio-legal Series*, 825-846 (2017) (with Eyal Katvan) [peer-reviewed]

6. "Informed Consent to Legal Treatment – Lessons from Medical Informed Consent" 24(2) *The International Journal of the Legal Profession* 125-144 (2017) (with Eyal Katvan)[peer-reviewed]

7. "Age limitation for organ transplantation: the Israeli example" 2016 *Age and Ageing* 1-3 (with Eyal Katvan; Israel Doron; Tamar Ashkenazi; Hagai Boas; Michal Carmiel-Haggai; Michal Dranitzki Elhalel; and Jacob Lavee) [peer-reviewed]

8. "Sub Judice and Freedom of Speech – Words in the Air and the Dead Letter of the Law" 12 *Alei Mishpat* 261-284 (2015, Heb.)

9. "Judges 'Perception of Lawyers' Behavior in Court" 21 *HaMishpat* 11-49 (2015, Heb.) (with Chami Ben Noon, Eyal Katvan)

10. "Truth, Lies, and in Between Them – Developments in Israeli Libel Law 2012" 8 *Din U'Dvarim* (2014, Heb.) 197-239.

11. "On the Relationship between Setting the Legal Rule and Adjudicating the Concrete Case" 10 *Alei Mishpat* (2012, Heb.) 7-52

12. "Between Civility and Reputation, Following C.A. 1104/07 Kheir v. Gil" 15 *Hamishpat* 71-110 (2010, Heb.) (with Eyal Katvan)

13. "Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts" 33(1) *American Journal of Trial Advocacy* 71-112 (2009)

14. "Consequences of Ignoring Uncertainty – 'Probability of Causation' in Radiation Cases 39(1) *Environmental Policy and Law* 70-72 (2009) (with Talma Izak-Biran, Richard Laster, Tamar Berman)

15. "Causation in Fact in Toxic Torts", 23(2) *Law Studies* 559-620 (2007) (Heb.)

16. "The Theoretical Foundation of Proportional Liability in Israel" 37 *Mishpatim Law Review* 177-218 (2007). (Heb.)

17. "Volenti Non Fit Injuria: Theory and Reality", *1 Alei Mishpat* (2000), pp.327-354 (Heb.)

## Book Chapters

18. "The Ringworm Victims Compensation Act, 1994 – Between legislation and case law, Rhetoric and Compensation" in *Ringworm and Ringworm Irradiation in Israel and Around the World* (temporary name), (Shifra Shvarts, Ed., to be published 2017), (with Eyal Katvan) (Heb.) [peer-reviewed]
-------------------------------------------------------------------------------------------------

19. "Causal Uncertainty and Proportional Liability in Israel" in *Proportional Liability – Analytical and Comparative Perspectives* pp. 183-198 (Israel Gilead, Michael D. Green, Bernhard A. Koch, Eds., De Gruyter publishing, 2013) (with Israel Gilead).

20. "Ringworm, Irradiation, and Compensation: The International Legal Aspects" forthcoming in *Ringworm, Irradiation, and History*, **(**Theodore M. Brown, Shifra Shvarts , Siegal Sadetzki, Eds., The University of Rochester Press and Boydel & Bruer inc., to be published) (with Eyal Katvan) *Approx. 55 pages*

21. "Pure Economic Loss in Israel" in *PURE ECONOMIC LOSS* 186-217 (Mauro Bussani, Vernon Palmer, Eds., Routledge-Cavendish publishing, 2009)

21a A revised version of this chapter was published in ISRAELI REPORTS TO THE XVII INTERNATIONAL CONGRESS OF COMPARATIVE LAW 199-230 (The Sacher Institute, 2009) (with Tamar Gidron)

22. "Libel Law" in DEFENDING FREEDOM OF SPEECH IN THE DEMOCRATIC STATE (M. Kremnitzer ed., 2003, The Israel Democracy Institute, Heb.) pp. 179 – 233 (with K. Genaim, M. Kremnitzer)

## Boaz Shnoor - Conference Papers

"Judges' Precious Time: Let's talk about it" Workshop on Too Few Judges: Regulating the Number of Judges in Society. Onati International Institute for the Sociology of Law. June 2016 (with Eyal Katvan)

"Eastern or Western 'Kavod'? Honor in Informal Courts in Mandatory Palestine" 32nd annual Conference of the Association for Israel Studies, Jerusalem, June 2016 (with Eyal Katvan)

"Honor in Informal Courts in Mandatory Palestine" Research Workshop of the Israel Science Foundation - Honor in a Changing Society, Ramat-Gan, June 2016 (with Eyal Katvan)

"Informed Consent to Legal Treatment" Workshop on Consumer Redress When Lawyers Are Negligent. Onati International Institute for the Sociology of Law. July 2015 (with Eyal Katvan)

"'But Your Honor, he Started it': Honor and the Regulation of Emotions in Informal Courts in Mandatory Palestine", The Association for Law & History Conference, Jerusalem, October 2015 (with Eyal Katvan)

"Judges' Perceptions of Counsels' Behavior in Court" Lawyers' Legal Ethics and Professional Responsibility – Hamishpat Law Review, Tel-Aviv, April 2015

"Courts as the Creators of Legal Rules : The Case, the Judge, the Court and the State" How Objective Can Judges Be: Legal Rule, Evidence, Narratives, Society, University Centre Saint-Ignatius Antwerp, Antwerp, May 2014

"The History of the Struggle between Freedom of Speech and Honor – Legislation vs. Adjudication" The Law and History Association Annual conference, Jerusalem, October 2013

"Cases, Judges, or Politics – What make American Courts Change Tort Law?" The Law and Society Conference, College of Law and Business, Ramat-Gan, December 2012

"Libel Law in Israel 2012" The Legal Year Conference, Haifa University, Haifa, October 2012

"Archives with Honor" The Law and History Association Annual conference, Jerusalem, October 2012 (with Eyal Katvan)

"Intermediaries Liability for Libel - Lessons from Past Developments in Israeli Courts and the Knesset" Intermediary Liability in the Digital Age, Haifa University, Haifa, May 2012

"To Accept or Not to Accept – A study of U.S. State Courts Law Changing Decisions" The Annual Private Law Society Conference, Bar-Ilan University, Ramat-Gan, May 2012

"Torts as Regulation of Off-Shore Drills" Regulation of Off-Shore Drills, Tel-Aviv University, Tel-Aviv, April 2012

"A Community with Its Own Dignity" The Annual Conference of the Israeli Association of Law and Society, Bar Ilan University, Ramat-Gan, December 2011 (with Eyal Katvan)

"Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts Decisions to Accept or Reject the Loss of Chance Doctrine" the 3rd Annual Conference of the Israeli Association of Private Law, Ramat-Gan, May 2012

"Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts Decisions to Accept or Reject the Loss of Chance Doctrine" Faculty Seminar, Academic Center of Law & Business, Ramat-Gan, November 2011

"Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts Decisions to Accept or Reject the Loss of Chance Doctrine" the 6th Annual Conference on Empirical Legal Studies, Chicago, November 2011

"Terms of Betrayal – Legal and behavioral aspects of ringworm treatment in Israel", Association for Israel Studies, Boston, June 2011. (with Eyal Katvan)

"The Influence of Betrayal on Law Making: Lessons from the United States and Israel". Berger International Legal Studies Program Speaker Series, Cornell University, Ithaca, New York, March 2011

"Behavioral Analysis of the Ringworm Law", Conference on New Research Aspects of the Ringworm Disease in the Mass *Aliya* in Israel and Abroad, The Gertner Institute for Epidemiology and Health Policy, the National Center for Compensation of Ringworm Victims, Tel-Hashomer, January 2010 (with Eyal Katvan)

"Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts" Faculty Seminar, Academic Center of Law and Business, December 2008

"Punitive Damages, Compensation for Non-pecuniary Harm and Compensation without Proof of Harm" Conference: "Between Criminal and Civil", Tel Aviv Magistrates' Court and the Academic Center of Law and Business, November 2008

"Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts" The Yuval Levy & Co. Law & Environment Workshop, the Law Faculty, Tel Aviv University, November 2008

"Economic Incentives and Pollution: Goal and Methods", Conference on Economic Incentives in Environmental Law, Academic Center of Law and Business, June 2008

"Loss of Chance: A Behavioral Analysis of the Difference Between Medical Negligence and Toxic Torts" Faculty Seminar, Law School, The College of Management Academic Studies, Rishon LeZion, May 2008

"Evidence Law and Uncertainty in Tort Law", Conference on Evidence Law, Haifa University, Haifa, May 2008 (Heb.)

"Libel law – Theory and Reality" Conference on Libel Law in The Israel Democracy Institute, Jerusalem, March 2007 (Heb.)

"Pure Economic Loss in Israel", the 17th Congress of the International Academy of Comparative Law, Utrecht, The Netherlands, July 2006 (with Tamar Gidron)

"Pets, Torts and Animal Rights", Conference on Animal Rights and Biodiversity, Academic Center of Law and Business, May 2006. (Heb.)

*"Environmental Law: From Public to Private Enforcement", the 8th International Conference of the Israel Society for Ecology and Environmental Quality Sciences - Living with Global Change: Challenges in Environmental Sciences, Rehovot, Israel, May - June 2005*

"The Causal Connection in the Shamgar Committee Report on the Kishon River", the 13th annual conference of the Rationality Center of the Hebrew University, Ein Gedi, Israel, December 2003 (Heb.)

"Causation in Environmental Torts", the annual convention of the Israel Society for Ecology and Environment, Tel Aviv, Israel, December 2002 (Heb.)