IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------------------- X

FORCE, *et al.*,

                Plaintiffs,

     -against-

THE ISLAMIC REPUBLIC OF IRAN, *et al*,

                Defendants.

Docket No:
16-cv-01468 (RDM)

---------------------------------------------------------------------- X

## MOTION BY PLAINTIFFS

On March 5, 2018, Plaintiffs moved for a default judgment, showing that the defendants Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and Security ("MOIS"), and the Syrian Arab Republic ("Syria") had defaulted and requesting a hearing to establish their entitlement to judgment under 28 U.S.C. § 1608(e). (Dkt. 85, 87, 91). That evidentiary hearing was held on October 16 and October 17, 2018. On May 31, 2020, this Court entered a Memorandum Opinion and Order ("Order") in favor of the Plaintiffs and against the defendants Iran, MOIS and Syria for damages under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*, for providing material support to the terrorist organizations of Hamas and Palestinian Islamic Jihad, enabling them to carry out the terrorist operations that caused the Plaintiffs' injuries and losses, and referred the matter to a special master to report on damages. (Dkt. 111).

The Court, however, denied the motion as to the Parnas family, including Daniella Parnas, without prejudice. (Dkt. 111). This Court held that the Parnas family could not state a claim for recovery for their injuries because their claims are for "emotional harms arising out of an attempted

extrajudicial killing in which no one was injured." (Dkt. 111, p. 45). The Court noted that none of the Parnases was home or in the "immediate vicinity" when the rocket attack occurred. (Dkt. 111, p. 49). Therefore, the Court found the claims failed under § 1605A(c) and under § 1605A(a)(1). Additionally, the Court found the Parnases' claims under common law for intentional infliction of emotional distress or assault were not established based on the facts. (Dkt. 111, pp. 50-51). While the Court found the Parnases demonstrated "severe emotional distress," the Court then held they were not entitled to recover damages under § 1605A(c) because they did not sustain a personal injury or death caused by an act of extrajudicial killing. (Dkt. 111, pp. 51-52). Further, the Court concluded that none of the Parnases were entitled to recover under an assault theory as none of them was home or in the immediate vicinity of the rocket attack, "nor do they assert that they were put in 'imminent apprehension' of physical harm." (Dkt. 111, pp. 51-52).

Plaintiff Daniella Parnas now moves again for a default judgment based on the court record in this case and additional evidence now being submitted with the instant motion. Plaintiffs respectfully submit that a default judgment in favor of Daniella Parnas should be granted based on established case law that has awarded plaintiffs in Ms. Parnas' position monetary relief for psychological injuries even without physical injuries.

In the interest of brevity, Plaintiffs omit a detailed recounting of the pertinent facts, relying on and incorporating their factual statement in their Motion for a Default Judgment of March 5, 2018 (Dkt. 85, 87, 91) and the Court's summary of those facts in its Order. (Dkt. 111).

## ARGUMENT

"It is firmly established that a plaintiff may recover damages for mental suffering unaccompanied by physical injury where the plaintiff sues for an intentional tort." *Nnadili v. Chevron U.S.A., Inc.*, 435 F. Supp. 2d 93, 99 (D.D.C. 2006) (citing *Adams v. George W. Cochran*

*& Co., Inc.*, 597 A.2d 28, 31 (D.C. 1991)). *In Schooley v. Islamic Rep. of Iran*, Civ. No. 17-1376, 2019 WL 2717888 (D.D.C. 2019), the defendants were held liable for assault for all service members present at the Khobar Towers on June 25, 1996 because the defendants "acted 'intending to cause a harmful or offensive contact with…or an imminent apprehension of such a contact' to those attacked, and those attacked were 'thereby put in such imminent apprehension.'" *See* Restatement (Second) of Torts § 21(1) (Am. Law Inst. 1977); *Murphy v. Islamic Rep. of Iran*, 740 F.Supp.2d 51, 73 (D.D.C. 2010) ("since 'acts of terrorism are, by their very nature, intended to harm and to terrify by instilling fear of further harm,' where plaintiffs asserted 'that they did, in fact, fear such harm because of the attack,' Iran may be held liable for assault"). The Court in *Schooley* also indicated defendants are liable for battery "if, when they provided material support and resources for the attack, they acted 'intending to cause a harmful or offensive contact…or an imminent apprehension of such a contact' with those attacked, and a 'harmful contact with [those attacked] directly or indirectly results.'" Restatement (Second) of Torts § 13. "Harmful contact has occurred where 'any physical impairment of the condition of another's body, or physical pain or illness' results." *Id*. § 15. The Court in *Schooley* found that all service members present at the Khobar Towers suffered extreme emotional distress with 62 of them diagnosed with PTSD. Significantly, several of the service members suffered only emotional harm, yet were still awarded compensatory damages for pain and suffering. As such, the Court found the defendants liable to all 101 plaintiffs present at the Khobar Towers at the time of the attack for intentional infliction of emotional distress because "acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." (quoting *Beklin v. Islamic Rep. of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009)).

Significantly, in a case similar to the present case, *Kaplan v. Hezbollah*, 213 F.3d 27 (D.D.C. 2016), the Court awarded the various plaintiffs monetary awards solely for emotional injuries relying upon *Harrison v. Rep. of Sudan*, 882 F. Supp. 2d 23, 49 (D.D.C. 2012) for the proposition that this Court has typically awarded victims who "suffer[ed] severe emotional injury without physical injury" $1.5 million. In *Kaplan v. Hezbollah*, 213 F.3d 27 (D.D.C. 2016), Dkt. 64, Civ. No. 09-00646, Chayim and Nechama Kumer were awarded compensatory damages for the pain and suffering they endured because of Hezbollah rocket attacks. Despite Chayim and Nechama Kumer not having sustained physical injuries, the Court awarded damages for psychological injuries they incurred due to the Hezbollah rocket attacks. Mr. Kumer was "traumatized to the point of being unable to attend his local synagogue for three years following the attacks due to recurring flashbacks of ongoing rocket blasts which took place while he was praying." *Kaplan v. Hezbollah*, 213 F.3d 27, 37 (D.D.C. 2016), Dkt. 64, Civ. No. 09-00646. Mr. Kumer was diagnosed with PTSD, an anxiety disorder, and hospitalized three times with gallbladder problems due to the stress from the rocket attacks. *Id*. at 37-38. Accordingly, the Court awarded Mr. Kumer a $2 million enhancement of compensatory damages for his pain and suffering and Nechama Kumer $1 million in solatium damages for the emotional trauma she encountered due to the "extreme and outrageous conduct" experienced by Mr. Kumer. *Id*. at 38-39.

A supplemental declaration of Daniella Parnas is submitted herewith. The supplemental declaration further details and particularizes the damages suffered by Ms. Parnas.

In her first declaration (Dkt. 69) Daniella Parnas states that, like Mr. Kumer, she was in the zone of danger of a rocket attack. She states that on November 21, 2012, she heard the siren warning of an incoming rocket attack while she was driving to the grocery store and to throw away cardboard boxes that had been knocked out of her mother's windows three days earlier by a rocket.

She had to quickly pull her vehicle over and run into the closest bomb shelter, and felt the bomb shelter vibrate when a rocket landed nearby.

In her supplemental declaration submitted herewith, Ms. Parnas states that she was in fear for her life and the life of her mother, especially since her house was nearby. She continues that when she was able to leave the bomb shelter, she saw the rocket had struck her home less than 165 feet from the bomb shelter. She had no idea if her mother, who lived in the connecting house, was alive or dead, and she had no idea if another rocket would be launched and hit them. Nevertheless, she states, despite her fear for her life, she left the bomb shelter and ran to her house to try and find her mother.

While Ms. Parnas and her mother were not physically harmed, both were clearly in the zone of danger and could have easily been killed by rockets that day.

Because of the rocket attacks, like Mr. Kumer, Daniella Parnas experienced severe emotional harm with physical ramifications, including sleepless nights, terrible stomach issues with pain, painful anal fissures with bleeding when she uses the bathroom, missed days at work, anxiety, flashbacks, nightmares, crying spells, inability to focus, and becoming a "recluse". (Dkt. 35, Ex. 34; Dkt. 69). Daniella for the first time in her life following the rocket attacks has had to treat with a psychiatrist and she has had to see her family doctor and physicians for her pain and symptoms. (Dkt. 35, Ex. 34; Dkt. 69). Furthermore, Daniella has had to be take sleeping pills and psychiatric medication. (Dkt. 35, Ex. 34; Dkt. 69). Moreover, like Mr. Kumer, Daniella's psychological issues have not subsided since the Hezbollah rocket attacks, as indicated by Dr. Rael Strous. (Dkt. 35, Ex. 34; Dkt. 69; Ex. A). Therefore, just like Mr. Kumer, Daniella was in the immediate vicinity of incoming rocket attacks and just like him, Daniella has sustained serious psychological injuries that have caused physical ailments.

Jared and Danielle Sauter, plaintiffs in *Kaplan v. Hezbollah*, 213 F.3d 27 (D.D.C. 2016), Dkt. 78, Civ. No. 09-00646, sought damages for injuries sustained due to rockets fired from Hezbollah from Lebanon into Israel in July 2006. Jared and Danielle Sauter, just like Daniella Parnas, did not suffer physical injuries from the rocket attacks. Jared Sauter, a U.S. citizen, suffered from anxiety, panic attacks, inability to sleep, heart palpitations, sweating and PTSD due to the rocket attacks. Jared was awarded $1.5 million in damages and Danielle, an Israeli citizen, was awarded $1 million in solatium damages. *Kaplan v. Hezbollah*, 213 F.3d 27, 36, 39 (D.D.C. 2016).

Dvora Kaszenmacher and her daughter, Chaya Alkareif, plaintiffs in *Kaplan v. Hezbollah*, 213 F.3d 27 (D.D.C. 2016), Dkt. 77, Civ. No. 09-00646, sought damages for injuries sustained on July 13, 2006 from rockets fired by Hezbollah from Lebanon into Israel. Dvora and Chaya experienced psychological injuries due to the rockets fired into the city of Tzfat, including one rocket that hit near Chaya when she was delivering groceries to another family member's house. The Special Master in that case found that Dvora and Chaya established a right to recovery as the rocket attacks were "emotionally devastating to them." *Kaplan v. Hezbollah*, 213 F.3d 27 (D.D.C. 2016), Dkt. 77, Civ. No. 09-00646. The Court agreed with the Special Master's recommendation and awarded Dvora and Chaya each $1.5 million in compensatory damages for pain and suffering and $850,000 million in solatium damages to Dvora and $750,000 to Chaya in solatium damages. *Id*. at 36, 39.

In *Kaplan v. Hezbollah*, 213 F. 27 (D.D.C. 2016), Dkt. 75, Civ. No. 09-00646, plaintiffs Brian and Karene Erdstein, along with their children, were awarded compensatory damages for the pain and suffering they endured because of Hezbollah rocket attacks launched from Lebanon into Tzfat, Israel in July 2006. On July 13, 2006, a series of rockets landed in Tzfat. Several of those rockets landed in the Erdsteins' neighborhood. In fact, one rocket flew over Brian's head

while standing in the courtyard of his property. The Erdsteins feared for their lives that day so they fled Tzfat for safety. Following the rocket attacks, Brian became depressed and unable to work. The family had to get food from shelters as their money ran low while renting an apartment in another town far from Tzfat. Brian was unable to help his wife, who was pregnant with their sixth child at the time, with the children and Karene suffered a miscarriage. Brian has difficulty focusing, is less friendly, avoids media and has flashbacks. Dr. Strous diagnosed Brian with chronic dysthymia (moderate), partial PTSD, depression, and adjustment disorder due to the Hezbollah rocket attacks in July 2006. *Kaplan v. Hezbollah*, 213 F. 27 (D.D.C. 2016), Dkt. 75, Civ. No. 09-00646.

Karene felt the rocket explosions rock their house and she feared for her life and the lives of her family on July 13, 2006. *Kaplan v. Hezbollah*, 213 F. 27 (D.D.C. 2016), Dkt. 64, Dkt. 75, Civ. No. 09-00646. Karene was four months pregnant at the time of the rocket attacks. Karene stated that Brian was unable to fully function after the rocket attacks because he saw a rocket attack and because they were forced to flee their home. Karene lost the baby and had to have a dilation and curettage procedure. Karene indicated before losing the baby after the rocket attacks she was experiencing low energy, anxiety and "heart palpitations." *Kaplan v. Hezbollah*, 213 F. 27 (D.D.C. 2016), Dkt. 75, Civ. No. 09-00646. After having the dilation and curettage procedure, Karene had a high fever and was vomiting. She was diagnosed with tonsillitis. Karene also experienced post-partum depression. Before the rocket attacks, Karene had a life goal of becoming a midwife and she had enrolled in two extra years of nursing school after the rocket attacks, but she found it challenging to earn her certification due to the images from her miscarriage and the anxiety and stress from the rocket attacks. Dr. Strous diagnosed Karene with "chronic dysthymia (moderate), adjustment disorder with depressed mood and partial PTSD." *Kaplan v. Hezbollah*, 213 F. 27

(D.D.C. 2016), Dkt. 75, Civ. No. 09-00646. Based on the Special Master's recommendation, the Court awarded Brian Erdstein $1.5 million in compensatory damages for pain and suffering and $1 million in solatium damages. *Kaplan v. Hezbollah*, 213 F. 27, 36, 39 (D.D.C. 2016). Karene Erdstein was awarded $2.5 million in compensatory damages for pain and suffering and $1 million in solatium damages. *Id*. at 37, 39.

In *Kaplan v. Hezbollah*, 213 F. 27 (D.D.C. 2016), Dkt. 66, Civ. No. 09-00646, plaintiffs Laurie and Margalit Rappeport received compensatory damages for injuries sustained on July 13, 2006 due to rockets fired from Lebanon by Hezbollah into Tzfat. Laurie and Margalit felt the force of a rocket strike a neighbor's house. In fact, the force of the rocket hitting a neighbor's house knocked Margalit, who was playing outside in her tree house, to the ground. Laurie and Margalit saw the dead body of a neighbor killed in that rocket attack being loaded into an ambulance. Laurie and Margalit fled Tzfat for safety. Laurie and Margalit both had psychological counseling for the negative consequences of the rocket attacks. When Margalit returned to school, she was misbehaved, but prior to the rocket attacks, Margalit never had any issues at school. Dr. Strous diagnosed Laurie with anxiety disorder and dysthymia. Dr. Strous noted that Laurie reported feelings of anxiety and depression, as well as increased appetite and poor sleep during the war. Additionally, Laurie had financial stress and had to take care of Margalit by herself because her husband, from whom she is now divorced, intentionally stayed out of the country with his girlfriend during the war. *Kaplan v. Hezbollah*, 213 F.3 27 (D.D.C. 2016), Dkt. 66, Civ. No. 09-00646.

Dr. Strous diagnosed Margalit with anxiety disorder and attention deficit hyperactivity disorder due to the rocket attacks. In rendering a recommendation of an award for pain and suffering of $1.5 million to Laurie and Margalit each, despite no physical injuries, the Special

Master cited a "well settled proposition that 'acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror, in their targeted audience[.]'" *Stethem v. Islamic Rep. of Iran*, 201 F.Supp.2d 78, 89 (D.D.C. 2002). *Kaplan v. Hezbollah*, 213 F.3d 27, 36 (D.D.C. 2016). The Court also awarded Laurie $850,000 in solatium damages for the stress and anxiety she experienced due to Margalit's trauma. *Id*. at 39.

Just like the various plaintiffs in *Kaplan*, Daniella suffered serious emotional injury. Dr. Strous in his report notes that Daniella still recalls how she heard a strong and loud blast after diving into a nearby bomb shelter after the siren went off on November 22, 2012. (Dkt. 35, Ex. 34). Notably, because she heard the loud blast, Daniella knew the rocket landed nearby. (Dkt. 35, Ex. 34). Daniella even felt the vibrations from the rocket attack that day. (Supp. Declaration of Daniella Parnas). When she left the bomb shelter several minutes later, Daniella saw a fire and knew it was coming from her home. (Dkt. 35, Ex. 34). Daniella knew her mother was inside her adjoining home and was worried for her mother. (Dkt. 35, Ex. 34). Daniella was very anxious and frightened. (Dkt. 35, Ex. 34). Significantly, while trying to clean up, Daniella witnessed more missiles going over her head in the sky. (Dkt. 35, Ex. 34). Daniella reported to Dr. Strous difficulty sleeping; frustration; guilt; decreased appetite for eight months; inability to focus due to stress; nightmares of missiles striking her property again with waking up in a state of panic and sweating; flashbacks; avoidance of reading newspapers and war movies; hypersensitivity to noises (e.g. sirens, motorbikes); lethargy / reduced energy; crying episodes; inability to work due to low energy and inability to focus; intense migraines; general weakness of her body; and social withdrawal. (Dkt. 35). Due to her sleeping difficulties, Daniella was prescribed sleeping medication by her family physician. (Dkt. 35, Ex. 34). Additionally, Daniella receives psychological treatments and takes medication for depression and anxiety. (Dkt. 35, Ex. 34). Dr. Strous noted in his report that

Social Security has acknowledged Daniella "as suffering from post-trauma symptomatology." (Dkt. 35, Ex. 34). As with various plaintiffs in *Kaplan*, Dr. Strous diagnosed Daniella with PTSD and persistent depressive disorder in moderate severity with late onset with pure dysthymic syndrome. (Dkt. 35, Ex. 34). Accordingly, the Court should depart upward from the baseline amount of $1,500,000 and grant Daniela Parnas $2,000,000.

## CONCLUSION

WHEREFORE, for the reasons set forth above and in Plaintiffs' prior motion for default judgment (Dkt. 85, 87, 91) which resulted in an Order denying Daniella Parnas' application for a default without prejudice (Dkt. 111), and on the basis of the Supplemental Declaration of Daniella Parnas submitted herewith, Plaintiffs respectfully request that this Court reconsider its prior ruling, grant a default judgment in favor of plaintiff Daniella Parnas, and refer Daniella Parnas' claim to the Special Master to report on her damages.

Dated:   Brooklyn, New York
         February 4, 2021

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiffs*

by: _____
    Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on the date indicated below a true copy of the foregoing was served via ECF on all counsel of record herein:

Dated: Brooklyn, New York
    February 4, 2021

                 _____
                 Robert J. Tolchin