IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------------------X

FORCE, *et al.*,

                Plaintiffs,

-against-

THE ISLAMIC REPUBLIC OF IRAN, *et al*,

                Defendants.

Docket No:
16-cv-01468 (RDM)

---------------------------------------------------------------------X

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF DANIELLA PARNAS' MOTION FOR DEFAULT
JUDGMENT, SUBMITTED IN RESPONSE TO THE COURT'S
<u>SEPTEMBER 29, 2021 MINUTE ORDER</u>**

On September 29, 2021 this Court issued a minute order ("Minute Order") setting this matter down for a motion hearing on October 26, 2021 regarding Plaintiff Daniella Parnas' motion for a default judgment. In the Minute Order, this Court directed as follows:

*[Question 1:]* Plaintiffs shall be prepared to discuss whether a plaintiff may avail herself of the Foreign Sovereign Immunity Act's terrorism exception for injuries incurred as part of an attempted killing in which no one was killed. The Court notes that the statute carves out an exception to the jurisdictional immunity enjoyed by foreign states "for personal injury or death that was caused by an…extrajudicial killing," 28 U.S.C. § 1605A(a)(1) (emphasis added), and that "extrajudicial killing ha[s] the meaning given [that] term[] in section 3 of the Torture Victim Protection Act of 1991," *id.* § 1605A(h)(7). Section 3 of the Torture Victim Protection Act, in turn, defines an extrajudicial killing as "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples." Pub. L. No. 102-256, § 3(a), 106 Stat. 73, 73 (1991) (codified at 28 U.S.C. § 1350, note). At the motions hearing, Plaintiffs shall be prepared to discuss *[Question 2:]* how the injury suffered by Plaintiff Daniella Parnas satisfies this definition, and, more generally, *[Question 3:]* how the text of the Foreign Sovereign Immunities

> Act's terrorism exception for extrajudicial killings can be squared with Parnas's *[sic]* claim or other claims that rely on the exception for an extrajudicial killing where no death occurred. The Court further notes that the parallel provision of the Torture Victim Protect Act of 1991 arguably contemplates that an attempt will not suffice, since the provision provides a remedy to "the individual's legal representative or to any person who may be a claimant in an action for wrongful death." 28 U.S.C. § 1350, note.

(Minute Order, Sept. 29, 2021).

Having in mind to expedite matters at the motions hearing on October 26, 2021, Plaintiff Parnas respectfully submits this supplemental memorandum which hopefully answers at least some of the Court's concerns.

Regarding the first question posed by the Minute Order, Plaintiff believes that the genesis of the question is an incomplete reading of Foreign Sovereign Immunity Act ("FSIA") § 1605A(a)(1). The question posed by the Minute Order focuses on whether what happened to Plaintiff Parnas can be squeezed into the definition of "extrajudicial killing" in the ***portion*** of § 1605A(a)(1) quoted in the Minute Order. But that quote is incomplete, and omits another prong that will carry the jurisdictional day for the Plaintiff Parnas. The complete statutory provision is as follows:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, ***or the provision of material support or resources for such an act*** if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1) (emphasis added). As this Court has already recognized in its May 31, 2020 order in this case (Dkt. 111, pp. 45-63), under this provision there are multiple paths to jurisdiction over a foreign state. The "extrajudicial killing" path, which the Minute Order focused

on, is just one path. "Provision of material support or resources for" "torture, extrajudicial killing, aircraft sabotage, [or] hostage taking" is another. Thus, Defendant Iran need not have actually carried out an extrajudicial killing itself in order for there to be jurisdiction. Indeed, in most of the lawsuits against Iran by terrorism victims the claim is not that Iran actually carried out or attempted the terrorist act itself, but rather that Iran acted through a terrorist group agent, and/or provided material support or resources to terrorist groups such has Hamas or the Palestine Islamic Jihad, which then carried out the terrorist acts at issue. Iran's provision of material support and resources to these terrorist organizations gives the Court jurisdiction over Iran even without reference to whether there was an extrajudicial killing or an inchoate extrajudicial killing.

This "provision of material support" path resolves the second question posed by the Minute Order as well. Since the Plaintiff Parnas is relying on "provision of material support" intended to support enumerated terrorist activity, it would not matter that in this case there was no successful extrajudicial killing, even if an extrajudicial killing carried to fruition were a prerequisite.

Given the answers to the first two questions, the third question becomes superfluous. However, it can be answered on its own.

The rocket that hit the Parnas home was not a stand-alone event involving just one rocket. It was part of a protracted, seven-day barrage of rockets fired by terrorists sponsored by Defendant Iran from Gaza, during which 1,500 rockets were fired at Israel and aimed at civilian populations. *See* https://mfa.gov.il/mfa/foreignpolicy/terrorism/pages/israel_under_fire-november_2012.aspx (last visited Oct. 24, 2021). During those rocket attacks, multiple people in Israel were killed and injured. *See* https://en.wikipedia.org/wiki/List_of_Palestinian_rocket_attacks_on_Israel_in_2012#November (last visited Oct. 24, 2021). Thus, it is not fair or reasonable to look at the rocket that hit the Parnas home in a vacuum. It must be viewed as part of a larger, week-long barrage of

rockets, in which many people were killed and injured. If the attack is viewed in the larger context, it is not true that nobody was killed or physically injured. It was only by luck or divine Providence that the rocket that hit the Parnas home fell during the brief period when Daniella Parnas had gone to take her cardboard to the recycling facility. A few minutes earlier or later and she would have been killed or injured. But that stroke of good fortune does not change the nature of the rocket attacks. They were aiming to kill and injure civilians. They took 1,500 shots. They succeeded in some, failed in others, but all the rockets were part of one larger event.

There is no question that a rocket attack, and certainly a rocket attack that is part of a week-long barrage of 1,500 rockets fired at civilian populations, is an effort by the people firing the rockets to kill somebody, i.e. conduct an "act of…extrajudicial killing." The question posed by the Court seems to be whether there can be an "extrajudicial killing" within the scope of § 1605A(a)(1) if the plaintiff was not killed. This Court has already answered that question:

> Killing or Attempted Killing
>
> To begin, the March 8, 2016 stabbing, October 13, 2015 bus massacre, and March 6, 2008 shooting, which resulted in the deaths of Taylor Force, Richard Lakin, and Avraham David Moses, respectively, indisputably constitute extrajudicial killings. No one, however, was killed in the October 29, 2014 shooting, the January 27, 2016 stabbing, or the 2011 and 2012 rocket attacks. *See supra* Parts II.F, D, G—H. That then poses the question of whether the TVPA's definition of extrajudicial killings reach attacks in which no one died. In other words: does the statute cover attempts? Decisions from this district and from other jurisdictions have held that it does. *See, e.g., Karcher v. Islamic Republic of Iran,* 396 F. Supp. 3d 12, 58 (D.D.C. 2019); *Gill v. Islamic Republic of Iran,* 249 F. Supp. 3d 88, 99 (D.D.C. 2017).
>
> Although the text of § 1605A does not address attempts, courts resolve statutory "ambiguities flexibly and capaciously" in light of the text, history, and remedial purpose of the statute to compensate those injured in terrorist attacks. *Van Beneden v. Al-Sanusi,* 709 F.3d 1165, 1167, 404 U.S. App. D.C. 223 & n.4 (D.C. Cir. 2013). The statute permits recovery for "personal injur[ies] or death…caused by…an act of…extrajudicial killing." 28 U.S.C. § 1605A(a)(1). Several decisions from this district have held that individuals who are injured but not killed in an attack that

results in the death of others may recover for their injuries under § 1605A. *See, e.g., Karcher,* 396 F. Supp. 3d at 58; *Salzman v. Islamic Republic of Iran,* No. 17-2475, 2019 U.S. Dist. LEXIS 163632, 2019 WL 4673761, at *12 (D.D.C. Sept. 25, 2019); *Estate of Doe v. Islamic Republic of Iran,* 808 F. Supp. 2d 1, 6, 14 (D.D.C. 2011); *Cohen v. Islamic Republic of Iran,* 238 F. Supp. 3d 71, 81 (D.D.C. 2017); *Haim v. Islamic Republic of Iran,* 784 F. Supp. 2d 1, 11 (D.D.C. 2011). Those injuries were, in the ordinary sense, "caused by" the "act of…extrajudicial killing"—a bombing, for example, might kill some of the victims and maim others. *See Salzman*, 2019 U.S. Dist. LEXIS 163632, 2019 WL 4673761 at *12. In that scenario, both sets of victims would suffer "personal injury or death…caused by an act of…extrajudicial killing," 28 U.S.C. § 1605A(a)(1)—that is, to continue the example, the bombing was, in fact, an act of extrajudicial killing and that act caused both the deaths and the injuries. "Congress enacted the terrorism exception expressly to bring state sponsors of terrorism…to account for their repressive practices," *Han Kim,* 774 F.3d at 1048, and that rationale extends to both injured and killed victims, see *Salzman,* 2019 U.S. Dist. LEXIS 163632, 2019 WL 4673761, at *12.

Although a closer question, the Court is also persuaded that the waiver of sovereign immunity includes attempted extrajudicial killings that result in serious physical injuries, even if no one is killed in the attack. As Judge Kollar-Kotelly explained in *Karcher v. Islamic Republic of Iran*, "[t]he text of Section 1605A(a)(1) does not expressly address attempts to commit acts that are listed in that provision," but it does "strip[] immunity" both for "personal injury or death that was caused by an act of…extrajudicial killing…or the provision of material support or resources for such an act." 396 F. Supp. 3d at 57-58. "Nothing on the face of Section 1605A(a)(1)," Judge Kollar-Kotelly continued, "requires that the material support or resources for an intended extrajudicial killing actually result in someone's death, as long as the victim represented in the case was injured." *Id.* Finding further support in both the legislative history of the statute and the D.C. Circuit's admonishment that the FSIA be "interpret[ed]…flexibly and capaciously," Judge Kollar-Kotelly held that "material support for an incomplete act of extrajudicial killing falls within the scope of Section 1605A(a)(1)." *Id*. at 57 (alteration in original). Several courts others have taken this same approach, "f[inding] that injuries resulting from 'deliberated' attempts to kill fall within the scope of Section 1605A(a)(1)." *Id.* at 58; *see also Schertzman Cohen v. Islamic Republic of Iran*, No. 17-1214, 2019 U.S. Dist. LEXIS 115278, 2019 WL 3037868, at *3 (D.D.C. July 11, 2019); *Gill*, 249 F. Supp. 3d at 99.

*Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 360-61 (D.D.C. 2020) (Dkt. 111, pp. 47-49).

This Court's analysis was in keeping with the plain meaning of the text of § 1605A(a)(1), which uses the words "***an act of***…extrajudicial killing." *Id.* (emphasis added). Notably, it does not say 'an extrajudicial killing.' The difference is that when a defendant does "an act of…extrajudicial killing," such as shooting a rocket that has the potential to kill someone, it does not matter for purposes of § 1605A(a)(1) whether it killed someone or not. Section 1605A(a)(1) depends on "an act," not an outcome. Thus, where a terrorist commits an act that could kill but winds up merely injuring the victim—even if the injuries are psychological and not physical—the terrorist has nevertheless committed an "act of extrajudicial killing," and the victim can recover for "personal injury" under § 1605A(a)(1).

Plaintiff Parnas believes this Court's analysis was in error is this Court's reading into § 1605A(a)(1) a requirement that the plaintiff have suffered "serious physical injuries." *Force*, 464 F. Supp. 3d at 360. Section 1605A(a)(1) says plaintiffs can recover for "personal injury." There is no mention in the statute of "personal injury" being limited to "serious physical injury." If this were a claim by an individual who was kidnapped and held hostage ("hostage taking" under § 1605A(a)(1)), and perhaps deprived of sleep ("torture" under § 1605A(a)(1)), but ultimately released without serious physical injury, plainly the plaintiff could recover without regard to the degree, *vel non,* of physical injury. *See Wyatt v. Syrian Arab Republic,* 908 F. Supp. 2d 216, 231 (D.D.C. 2012) (granting judgment to plaintiffs kidnapped and held hostage, but not subjected to serious physical injuries, by terrorists). Psychological injuries like Post Traumatic Stress Disorder ("PTSD") are exactly what one would expect a civilian nearly killed by a rocket to suffer, and indeed sometimes such psychological injuries can be far more disabling than a physical injury.

Plaintiff Parnas' motion makes the point that for intentional torts—which is the closest ordinary tort law analogy to claims for terrorism under § 1605A(a)(1)—psychological damages are commonly awarded even absent any (let alone any serious) physical injury.

Plaintiff's position is supported by precedent in terrorism cases. *See Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 36 (D.D.C. 2016) (awarding psychological damages where plaintiffs were psychologically traumatized by rocket attacks but were not physically injured); *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 49 (D.D.C. 2012) (awarding damages to plaintiffs on the scene of terrorist attack who did not suffer physical harm"); *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 84 (D.D.C. 2010) (awarding damages to plaintiff who was not physically injured in terrorist bombing but who suffered emotional damages in the aftermath of the attack); *Estate of Brown v. Islamic Republic of Iran,* 872 F. Supp. 2d 37, 42 (D.D.C. 2012) ("When a victim suffers severe emotional injury without physical injury, this Court has typically awarded the victim $1.5 million.")

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, in Plaintiffs' opening motion papers (Dkt. 117), and in Plaintiffs' prior motion for default judgment (Dkt. 85, 87, 91) which resulted in an Order denying Daniella Parnas' application for a default without prejudice (Dkt. 111), and on the basis of the Supplemental Declaration of Daniella Parnas submitted herewith, Plaintiffs respectfully request that this Court reconsider its prior ruling, grant a default judgment in favor of plaintiff Daniella Parnas, and refer Daniella Parnas' claim to the Special Master to report on her damages.

Dated: Brooklyn, New York
October 24, 2021

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiffs*

by: _____
Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on the date indicated below a true copy of the foregoing was served via ECF on all counsel of record herein:

Dated: Brooklyn, New York
    October 24, 2021

                     Robert J. Tolchin