IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAYLOR FORCE, et al.,<br>　　　　　Plaintiffs,<br><br>　　　　v.<br><br>THE ISLAMIC REPUBLIC OF IRAN, et al.<br>　　　　　Defendants. | Case No.: Civil Action No. 16-1468 (RDM) |

**BRIEF OF SERVICE MEMBER VICTIMS OF STATE SPONSORED TERRORISM AS *AMICI CURIAE* IN SUPPORT OF NIETHER PARTY**

　　　　　　　　　　　　　　　　　　　　　/S/   Patrick J. Hughes
　　　　　　　　　　　　　　　　　　PATRICK J. HUGHES
　　　　　　　　　　　　　　　　　　D.C. Bar # 1029733
　　　　　　　　　　　　　　　　　　Patriots Law Group of Lyons & Hughes, P.C.
　　　　　　　　　　　　　　　　　　5819 Allentown Road
　　　　　　　　　　　　　　　　　　Suitland, Maryland 20746
　　　　　　　　　　　　　　　　　　(301) 952-9000
　　　　　　　　　　　　　　　　　　patrickhughes@patriotslaw.com

　　　*Counsel for Amici Service Member Victims of State Sponsored Terrorism*

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ...............................................................................................................3

INTEREST OF AMCI ………......................................................................................................4

INTRODUCTION ..............................................................................................................................4

ARGUMENT ......................................................................................................................................6

CONCLUSION ................................................................................................................................10

APPENDIX ......................................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bundy v. Jackson,* 641 F.2d 934 (D.C.Cir.1981) ............................................................. 9

*Force v. Islamic Republic of Iran,* No. CV 16-1468 (RDM), 2022 WL 2452606, (D.D.C. July 5, 2022) ............................................................. 5-9

*Han Kim v. Democratic People's Republic of Korea,* 774 F.3d 1044 (2014) ............ 8-9

*Hansen v. Islamic Republic of Iran,* No. CV 22-00477 (DLF), (D.D.C. February 23, 2022) ............................................................. 5-8

*McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ............................................................. 9

*Price v. Socialist People's Libyan Arab Jamahiriya,* 294 F.3d 82 (D.C.Cir.2002) ...... 9

*Republic of Sudan v. Owens*, 194 A.3d 38 (2018) ............................................................. 8-9

**STATUTES, REGULATIONS, AND LEGISLATIVE MATERIALS**

28 U.S.C. § 1605A(a) ............................................................. 6-7

H.R. REP. NO. 104–383 (1995) ............................................................. 8

Restatement (Second) of Torts § 47 (Am. L. Inst. 1981) ............................................................. 6-8

**OTHER AUTHORITIES**

U.S. DEP'T OF DEF., MANUAL 1348.33, MANUAL OF MILITARY DECORATIONS AND AWARDS: DOD-WIDE PERSONAL PERFORMANCE AND VALOR DECORATIONS vol. 3, para. 3.7 (21 Dec. 2016) (C3, 7 May 2021) ............................................................. 4

## INTEREST OF *AMICI*

*Amici* are current and former service members who were injured in attacks perpetrated by state sponsored terrorism, and their families. They have pending claims before the U.S. District Court for the District of Columbia arising from the terrorism exception of the Foreign Sovereign Immunities Act ("FSIA"). They are aware of the Court's recent ruling in this matter based on a statutory interpretation that excludes claims such as theirs from the scope of the FSIA's terrorism exception, and that this Court has solicited further briefing on this question.  This brief is being filed pursuant to LCvR 7(o) and FRAP 29(a)(4), in support of neither party.  Accordingly, no party's counsel has authored this brief in whole or in part, nor was there any contribution of money received to fund the preparation or submission of this brief by any party, their counsel, or any other person.

A full listing of *amici* appears in the Appendix of this brief.

## INTRODUCTION

On January 8, 2020, Iran executed a retaliatory terrorist attack against the United States by launching eleven theater ballistic missiles, each containing nearly three quarters of a ton of high explosives, at Ein Al-Asad Airbase, Iraq ("Al-Asad"). This attempted extrajudicial killing injured hundreds of U.S. service members. Those U.S. service members were all awarded purple hearts for their injuries.[1]

---

[1] U.S. DEP'T OF DEF., MANUAL 1348.33, MANUAL OF MILITARY DECORATIONS AND AWARDS: DoD-WIDE PERSONAL PERFORMANCE AND VALOR DECORATIONS vol. 3, para. 3.7 (21 Dec. 2016) (C3, 7 May 2021) provides the following Award Criteria and Eligibility Requirements for the award of the Purple Heart: "(1) In accordance with E.O. 11016, subject to the provisions of Sections 1129, 1129a, and 1131 of Title 10, U.S.C., and Public Law 104-106, the Secretary of a Military Department will, in the name of the President of the United States, award the Purple Heart, with suitable ribbons and appurtenances, to any Service member or former Service member under the jurisdiction of that Department who, after April 5, 1917, has been wounded, killed, or who has died or may hereafter die of wounds received under any of the following circumstances: (a) In any action against an enemy of the United States. (b) In any action with an opposing armed force of a foreign country in which the Military Services are or have been engaged. (c) While serving with friendly foreign forces engaged in an armed conflict against an opposing armed force in which the United States is not a belligerent party. (d) As a result of an act of any such enemy or

On February 23, 2022, a complaint was filed in the U.S. District Court for the District of Columbia by these U.S. service members and their families against the Islamic Republic of Iran and the Islamic Revolutionary Guards Corps ("IRGC") pursuant to the FSIA's terrorism exception. *Hansen v. Islamic Republic of Iran,* No. CV 22-00477 (DLF), (D.D.C. February 23, 2022). The State Department is currently conducting diplomatic service of that complaint pursuant to 28 U.S.C. § 1608(a)(4).

On July 5, 2022, this Court denied a motion for default judgement as to certain plaintiffs in this matter, concluding that "the state sponsored terrorism exception to FSIA's grant of foreign sovereign immunity does not include attempted extrajudicial killings when no one is, in fact, killed in the attack." *Force v. Islamic Republic of Iran*, No. CV 16-1468 (RDM), 2022 WL 2452606 (D.D.C. July 5, 2022). During a July 26, 2022 hearing on this subject, this Court expressed concern regarding the effect of its ruling on claimants grievously injured in attacks that resulted in no deaths. Transcript of Hearing, *Force v. Islamic Republic of Iran*, No. 16-1468 (RDM), (D.D.C. July 26, 2022) ("Transcript") at 2. This court afforded those Plaintiffs an opportunity to brief that question in writing. Transcript at 18-22. Those plaintiffs filed a supplemental memorandum on September 20, 2022. ECF 133.

---

opposing armed forces. (e) As the result of an act of any hostile foreign force. (f) While being taken captive or while being held as a prisoner of war (POW). For purposes of this paragraph, a person is considered a POW if the person is eligible for the POW Medal pursuant to Section 1128 of Title 10, U.S.C. (g) After March 28, 1973, as a result of an international terrorist attack against the United States or a foreign nation friendly to the United States, recognized as such an attack for purposes of award of the Purple Heart by the Secretary of the Military Department concerned, or jointly by the Secretaries of the Military Departments concerned if members from more than one Military Department are killed or wounded in the attack. The Secretary of the Military Department concerned will notify the ASD(M&RA) before awarding the Purple Heart for an international terrorist attack that occurs in the United States or its territories. (h) After March 28, 1973, as a result of military operations while serving outside the territory of the United States as part of a peacekeeping force. (i) After December 6, 1941, by friendly weapon fire while directly engaged in armed conflict, other than as the result of an act of an enemy of the United States, an opposing armed force, or hostile foreign force. (j) After September 10, 2001, in an attack that was motivated or inspired by a foreign terrorist organization, which the Secretary of the Military Department concerned will treat in the same manner as an international terrorist attack, provided the attack specifically targeted the member due to his or her military service, as provided in Section 1129a of Title 10, U.S.C.

**ARGUMENT**

*Amici* take no issue with the dismissal of plaintiff Daniella Schwaron Parnas' claim, *per se*. In November 2012, while Parnas was running errands, her home was struck by one of approximately 1,500 rockets fired by terrorists into Israel that month. *Force v. Islamic Republic of Iran*, No. CV 16-1468 (RDM), 2022 WL 2452606, at *1 (D.D.C. July 5, 2022). As Parnas was aware, her three children were out of the house at the time, with her minor child staying at a relative's nearby, and two adult children serving in the military. *Id*. at 2. As a result, Parnas initially suffered "overwhelming anxiety and fright" followed by "symptoms of depression, anxiety and PTSD." *Id*. Parnas' three children also allegedly "suffer[ed] severe psychological and emotional injuries as a result of the rocket attack." *Id*.

Parnas and her children invoked 28 U.S.C. § 1605A(a) to recover for these emotional injuries when they, "along with dozens of other U.S. citizens, filed this suit against the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Syrian Arab Republic," based on these defendants' alleged support for a series of terrorist attacks in Israel. *Id*. The defendants defaulted and "[a]lthough the Court entered a default judgment in favor of nearly all Plaintiffs, the Court denied Plaintiffs' motion without prejudice as to Parnas and her children (as well as two children of another Plaintiff, who were not yet born at the time of the attack on that Plaintiff)." *Id*.

At the time of its initial refusal to issue Parnas a judgment, the court was "persuaded, at least at that time, 'that the waiver of sovereign immunity [included in § 1605A] includes attempted extrajudicial killings that result in serious physical injuries,'" *Id*. at 3. The court distinguished the claims of Parnas and her children from those of the other plaintiffs on the grounds that "the direct victim of such an attack must, at a minimum, face 'imminent

6

apprehension,' of the 'intended harmful ... contact,'" *Id.* at 3 (internal citations omitted) (quoting Restatement (Second) of Torts § 47 cmt. a). Accordingly, "because 'the destruction of the Parnas' home' did not qualify as an 'extrajudicial killing[ ]'" under this Restatement-based test the court concluded that it lacked jurisdiction over Parnas' claim and those of her children. *Id*.

Parnas, but not her children, then renewed her motion for entry of default judgment. During the adjudication of this renewed motion, including a hearing, supplemental memorandum and supplemental declaration from Parnas, the court decided to deny her motion on broader grounds. *Id*. As discussed in greater detail below, the court "on further reflection . . . conclude[d] that the state-sponsored terrorism exception to the FSIA's grant of foreign sovereign immunity does not include attempted extrajudicial killings when no one is, in fact, killed in the attack." *Id.* at 4. Accordingly, the basis for denying jurisdiction over Parnas' claims expanded to include the claims three of her co-plaintiffs who "suffer[ed] grievous injuries in attacks in which no one die[d]" over which the Court had initially accepted jurisdiction, i.e., those of Mendel Rivkin, Shmuel Brauner, and Yehuda Glick. *Id*. at 8. In so reasoning, the court notes that its ruling "is at odds with other decisions from this Court, and it risks leaving those who have suffered terrible injuries—including, perhaps, Rivkin, Brauner, and Glick—without a remedy." *Id.* at 9.

As victims of international terrorism grievously injured in failed attempts to murder them, *Amici* share this Court's concern that this recent statutory interpretation may work an injustice on them and those similarly situated. This Court's reasonable reluctance to open the floodgates to "every person in Israel" is easily resolved by applying the Restatement's zone of danger requirement, as this Court originally did. This approach is more consistent with the purpose of § 1605A, and avoids unnecessarily dismissing the claims of hundreds of injured and maimed terrorism victims.

7

As the Court is aware, a narrow interpretation of the FSIA, if generally adopted, will severely limit the scope of the terrorism exception and disproportionally impact hundreds if not thousands of U.S. Servicemembers. On January 8, 2020, Iran detonated over 22,000 pounds of high explosives on the Al Asad airfield housing hundreds of U.S. service members in an attempt to kill *Amici*. Living quarters, a dining facility, gym and other living accommodations were destroyed in the attack. Fortunately, no U.S. service members were killed in the terrorist attack. Unfortunately, the blast waves caused significant concussive injuries for hundreds of U.S. service members who are now part of the *Hansen* case pending before this court. These service members have been unable to continue their service, have lost their ability to provide for their families, and in one instance have committed suicide as a result of their injuries. The *Hansen* case is a small representative sample of the thousands of service members who have been injured in attacks perpetrated by state sponsors of terrorism.

Excluding all injured service members from bringing suit under the terrorism exception absent a co-occurring fatality is contrary to Congressional intent. Congress established the terrorism exception to the FSIA and has encouraged broad interpretation and application to penalize and deter state sponsors of terrorism. In both *Republic of Sudan v. Owens*, 194 A.3d 38 (D.C. 2018) and *Han Kim v. Democratic People's Republic of Korea,* 774 F.3d 1044 (D.C. Cir. 2014), this an expansive reading has been applied to the FSIA and congressional intent behind the terrorism exception to FSIA. Both courts found that the purpose of the terrorism exception was to hold state sponsors of terrorism accountable. Still further, they highlighted the fact that Congress has frequently amended the FSIA statute to make it easier for claimant to meet jurisdictional requirements, obtain judgements, recover assets, and "prevent [state sponsors of terrorism] from escaping liability for their sins." *Han Kim*, 774 F.3d at 1048.

The Court in *Force* takes a far narrower position than that intended by Congress on these cases. The effect would be similar to the effects the Court warned of in *Han Kim*, that such an opinion would defeat the Act's very purpose to "give American citizens an important economic and financial weapon," H.R.Rep. No. 104–383 at 62, to "compensat[e] the victims of terrorism, and in so doing to punish foreign states who have committed or sponsored such acts and deter them from doing so in the future." Citing *Price v. Socialist People's Libyan Arab Jamahiriya,* 294 F.3d 82, 88–89 (D.C. Cir. 2002).

The court in *Owens* came to similar conclusions stating that,

> Excusing the presence element in such cases may further deter foreign states from sponsoring terrorism and allow deserving plaintiffs to hold culpable defendants accountable for their conduct. At the same time, making such an exception is not likely to produce the type of unfair and unbounded liability that the presence element is intended to prevent.

*Owens*, 194 A.3d at 45.

Finally, the court in *Han Kim* provided clear guidance on how future cases should adjust their interpretations and evidentiary requirements for these cases. *Han Kim,* 774 F.3d at 1048 (stating, "Fortunately for the Kims and for Congress's objective, the Supreme Court has 'recognize[d] very realistically' that courts have the authority—indeed, we think, the obligation—to 'adjust [evidentiary requirements] to ... differing situations.' *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C. Cir. 1981) (citing *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973))." Here the Court need not expand the grounds for its opinion. The grounds for its original denial were sufficient and remain consistent with precedent set by this court and Congressional intent.

## CONCLUSION

For the forgoing reasons, the Court should narrow its dismissal of Plaintiff Parnas' claim in *Force* so as to not exclude claims of grievously wounded U.S. service members such as the *Amici*.

Dated: October 25, 2022                             Respectfully submitted,

                                                                /S/   Patrick J. Hughes
                                               PATRICK J. HUGHES
                                               D.C. Bar # 1029733
                                               Patriots Law Group of Lyons & Hughes, P.C.
                                               5819 Allentown Road
                                               Suitland, Maryland 20746
                                               (301) 952-9000
                                               patrickhughes@patriotslaw.com

*Counsel for Amici Service Member Victims of State Sponsored Terrorism*

## APPENDIX

### LIST OF *AMICI*

GEOFFREY HANSEN, et al., representing 185 plaintiffs and 67 service members in *Hansen v. Islamic Republic of Iran*, Case No. 1:22-cv-00477-DLF

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2022, the forgoing document was filed with the Clerk of the Court, by the Court's Case Management/Electronic Case Files system, causing it to be served on all counsel of record.

    /S/   Patrick J. Hughes
PATRICK J. HUGHES
D.C. Bar # 1029733
Patriots Law Group of Lyons & Hughes, P.C.
5819 Allentown Road
Suitland, Maryland 20746
(301) 952-9000
patrickhughes@patriotslaw.com